AUDUBON BLDG. CO., Limited, v. F. M. ANDREWS & CO.†

(Circuit Court of Appeals, Fifth Circuit. March 7, 1911.)

No. 2,073.

**1. CONTRACTS (§ 171*)—SEVERABLE CONTRACTS.**

A contract employing an architect to furnish preliminary sketches of a building for a specified per cent. of the cost of the building, payable on the acceptance of the sketches, to provide complete working drawings and specifications for a specified per cent. payable on completion of the drawings and specifications, and to supervise the construction of the building for a specified per cent. payable pro rata with the architect's certificates issued during the progress of the work is a severable contract providing for separate items for a price apportioned to each item, and the architect may recover for one item, though he may not recover for other items.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 754–757; Dec. Dig. § 171.*

Divisibility of contracts, see note to Saunders v. Short, 30 C. C. A. 467.]

**2. PRINCIPAL AND AGENT (§ 84*)—OBLIGATION OF AGENT.**

An architect employed to furnish working plans and specifications for and to superintend the construction of a building is the agent of the owner, and may not, without the knowledge of the owner, act as the representative of furnishers and contractors, or receive from them any compensation, and a breach of duty in this respect destroys his right to compensation.

[Ed. Note.—For other cases, see Principal and Agent, Cent. Dig. § 221; Dec. Dig. § 84.*]

**3. PRINCIPAL AND AGENT (§ 84*)—OBLIGATION OF AGENT.**

Where an architect employed to prepare preliminary sketches, complete working specifications for, and superintend the construction of, a building, contracted, without the knowledge of the owner, with engineers, whereby the latter should prepare specifications covering the mechanical equipment of the building, with the understanding that, if they obtained the contract for the work, they would make no charge for their services in preparing the specifications, the architect lost his right to compensation for furnishing the complete working specifications for and superintending the construction of the building, though it was customary for architects to do what the architect did.

[Ed. Note.—For other cases, see Principal and Agent, Cent. Dig. § 221; Dec. Dig. § 84.*]

**4. TRIAL (§ 261*)—INSTRUCTIONS—REQUESTS—SUFFICIENCY.**

Where, in an action on a severable contract of employment, the admitted facts precluded a recovery on specified items, and requested instructions, though subject to criticism, called the court's attention thereto, the refusal of proper instructions on the matter was error.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 660, 671, 675; Dec. Dig. § 261.*]

In Error to the Circuit Court of the United States for the Eastern District of Louisiana.

Action by F. M. Andrews & Co. against the Audubon Building Company, Limited. There was a judgment for plaintiff, and defendant brings error. Conditionally reversed.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

† Rehearing denied April 4, 1911.

This is an action at law by F. M. Andrews & Co.. architects, to recover $57,156.09 for breach of contract by the Audubon Building Company, Limited. On the trial before the court and jury the verdict was for $45,000. subject to a credit of $12,000 paid by the building company before the alleged breach, and the Audubon Building Company sued out this writ of error.

### The Plaintiffs' Pleadings.

The petition alleges: That plaintiffs, who are architects, were requested to and did draw the preliminary sketches and descriptive specifications for a proposed hotel which the building company intended to erect in New Orleans. That, the preliminary sketches and specifications being accepted, the building company made on May 22, 1907, a written contract with said architects to provide complete working drawings and specifications for the proposed building within four months from June 1, 1907, also to supervise the construction of said building, and to maintain an expert superintendent on the work at all times during its construction. That in compensation the building company agreed to pay the architects as their fee for such services a sum equal to 5 per cent. of the cost of said building, excluding certain furniture, kitchen and laundry equipment. That said compensation was agreed to be paid in installments, as follows: One-fifth upon the acceptance of the preliminary sketches; two-fifths upon the completion of the working drawings and specifications; two-fifths pro rata with the architects' certificates issued during the progress of the work.

It further averred that the building company let a contract on August 1, 1907, for the construction of said hotel building to the General Supply & Construction Company for a maximum price of $1,500,000, whereof $100,000 represented the profit to which the contractors would be entitled, and the remainder represented the estimated cost of the work based upon a unit price of 30 cents per cubic foot, the building to contain a minimum of 5,000,000 cubic feet.

It further averred that after the letting of this contract the architects prepared and furnished said working drawings and working specifications conforming to the preliminary sketches and descriptive specifications, except in some minor particulars, as to which the building company directed changes and modifications; that said building would have cost at least the sum of $1,500,000.

The breach of the building contract is charged to have occurred June 1, 1908, and after the foundations had been put in. by the building company announcing it had concluded to abandon the project of erecting a hotel building, whereupon all work was stopped and definitely abandoned.

The petition further charges that by the exercise of its right to cancel the bargain aforesaid the hotel building company became responsible to the architects as follows:

First. For the proportion of the fee which it had agreed to pay the architects, represented by the work already performed by them, that they had earned at the date of the breach, three-fifths of the stipulated fee, to wit: One-fifth on the acceptance of the preliminary sketches and descriptive specifications on May 22, 1907. Two-fifths on the completion of the working drawings and specifications on November 15, 1905. That these two items amounted to $45.000.

Second. That, in addition, the architects were entitled to 2 per cent. on the amount of architects' certificates issued during the progress of the work up to the date of the cancellation, to wit. the further sum of $1.431.32.

Third. For damages fixed at $22.723.77. being the amount the architects would have earned if the work had been allowed to proceed; the damages being fixed on the basis of the cost estimated under the contract—i. e., two-fifths of the whole commission less certain sums which plaintiffs claim they would have had to expend on their part in the completion of their own work, and in order to earn the amount here lastly claimed.

It is further alleged that plaintiffs are suing as assignees of F. M. Andrews and H. E. Kennedy individually, and that defendant was originally the Audubon Hotel Company, Limited, and it has changed said name to that which it

is here sued on. After the foregoing petition had been put at issue, plaintiffs amended by declaring that the items composing the first element of the demand are for services actually rendered, represent amounts actually earned and due and payable under the terms of their contract, and is that fair, reasonable, and proper proportion of the whole stipulated fee which should be fairly attributed to the services actually rendered, and the same is due them as under the contract, but, in the alternative, the services were actually worth the amount so stipulated and now claimed.

The answer is a general denial with many particular averments not necessary to recapitulate.

Under the pleadings above, the case went to trial, and during the taking of the testimony of Andrews, one of the plaintiffs, he admitted having made an agreement with McWilliams & Co., mechanical engineers of Louisville, Ky., whereby those persons were to prepare the working plans and specifications covering the mechanical equipment of the proposed hotel, with the understanding that, if as bidders for that portion of the work they should obtain the contract to do the work, they would make no charge for their services in preparing said working drawings and specifications; but, if they failed to get the work, they should be paid by the architects 3 per cent. of the cost of the work as compensation for said plans, drawings, and specifications, and also testified that McWilliams & Co. submitted a bid to the general contractor for $297,109, and this was the only bid submitted on that branch of the work, and was among the bids for the remainder of the work submitted by the contractor to the owners as required by the written contract. Thereupon defendant offered to file an amended and supplemental answer embodying that matter, and, objection being made by plaintiffs, the judge took time to consider, and meantime the trial was proceeded with, and occupied several days. After the evidence was concluded, the judge overruled the objection made by plaintiffs to the filing of the amended answer, and ordered it to be filed, which was done.

The answer sets out in detail the facts just recited, and further charges that at the time the architects made this agreement with McWilliams or subsequently the main contractor agreed to bear one-third of said fee of McWilliams & Co. and the architects the other two-thirds. It is further alleged that on or about February 15, 1908, the architects and the contractor presented to defendant the said McWilliams' bid, and the architects recommended the acceptance thereof by defendant; that the duty of the architects as agents of the defendant was to act in the utmost good faith with an eye single to the defendant's interests; that under the agreement between McWilliams and the architects the interests of the latter were inimical to defendant's; that said contract was not communicated to defendant, and constituted a breach of faith on their part, and was a fraud on, and a misrepresentation to, the defendant of such nature as to prevent a recovery of any commission.

The contract employing the architects and for commissions is as follows:

"New York, May 22nd, 1907.

"Audubon Hotel Company, Lt'd., Mr. William Mason Smith, President, New Orleans, La.—Gentlemen: Confirming our conversation of this date relative to the employment of the firm of F. M. Andrews & Co., as architects, for the proposed Audubon Hotel to be erected by your company, I beg to say that this firm agrees to provide for your use, complete working drawings and specifications for said building within the period of four months from the first day of June, 1907. We also agree to supervise the construction of this building in a complete manner, satisfactory to your company and to maintain an expert superintendent on the work at all times during the construction of the building at our own expense, until the same is completed and turned over to you. In consideration of our services as architects, you are to pay us a fee of 5 per cent. of the cost of said building, including the cost of decorations, but not including the cost of the furniture, laundry or kitchen equipment. One-fifth of this fee is payable upon the acceptance of the preliminary sketches, balance two-fifths additional upon the completion of the aforesaid working drawings and specifications, and the remaining two-fifths of the fee to be

payable pro rata with the architects' certificates as issued, to the contractor, during the progress of the work.

"[Signed]                                                    F. M. Andrews & Co.

"Accepted: Audubon Hotel Co., by William Mason Smith, Pres."

The trial judge charged the jury, and no exception was taken thereto. This charge contained no reference to the issues presented by the amended answer, except the following excerpt: "I take it there is no question that F. M. Andrews & Co. were employed by the Audubon Hotel Company as architects to design for them a hotel, and, of course, in accepting that employment, it was incumbent on the architect to act in honesty and good faith and with the ability that he had held himself out to possess."

After the charge the defendant requested a special charge as follows: "The defendant requests the court to charge the jury that the uncontradicted evidence in the case shows that defendant employed F. M. Andrews & Co. as architects to draw plans and specifications for and to superintend the construction of the building known as the 'Audubon Hotel,' and that said employment was accepted by said F. M. Andrews & Co.; that thereby said F. M. Andrews & Co. became the agents of defendant to assist in the said work, and the responsibility of the architect toward the owner in such cases is that which rests upon any person in favor of another person where the first-named person pretends to possess some skill and ability in some special employment, and offers his services to the public on account of his fitness in the line of business for which he was employed; that the undertaking by plaintiffs implied that they possessed skill and ability sufficient to enable them to perform the required services at least ordinarily and reasonably well, and that they would in their client's interest solely exercise and apply in the given case their integrity, skill and ability, their judgment and taste, reasonably and without neglect, and within the limits or understanding or instructions established between themselves and the principal; and, further, that they would deal fairly and honestly with their principal in all matters and things arising under such employment. I charge you, further, that it is the duty of an agent so situated to act in the most perfect good faith and with loyalty to the interest of his principal; and he is bound by the instructions his principal may have given him, and it is the duty of an agent to carry out the same as far as the same can be carried out and to the best of his ability." This was refused and exception was duly taken.

The defendant then requested the special charge following: "You are hereby instructed that if the evidence shows that F. M. Andrews & Co. made an agreement with McWilliams & Co. to pay them a commission of 3 per cent. or any part of such commission, with the understanding that said McWilliams & Co. should bid on the work, the plans and specifications of which had been prepared by them under the conditions set out in the answer, and if you shall find that such agreement was not communicated to the defendant, then the policy of the law requires even in the absence of fraud that plaintiff shall not be allowed to recover against the defendant. You are also instructed that such an arrangement for any part of the contract between F. M. Andrews & Co. and Audubon Hotel Company, Limited (now Audubon Building Company, Limited), vitiates the entire contract." This was refused, and exception duly taken.

The defendant also requested the special charge following: "I charge you, further, that an architect owes to his employer the duty of an honest administration of the affair put into his hands. If he uses his position to make a profit unknown to his employer and without disclosing the same to his employer, such an action is misconduct and is a fraud upon his employer, and must be considered in determining his credibility as a witness; thus if you find that the plaintiff in this case made contract with McWilliams & Co. whereby McWilliams & Co. performed certain services for the plaintiffs at a stipulated commission of 3 per cent. on the value or amount of the contract to which these services applied with the agreement that McWilliams & Co. were to bid for such work, and if they received the contract that they were to make no charge against the architect therefor, but, if they failed to get the contract, the architect was to pay McWilliams & Co. 3 per cent. upon the amount of the work aforesaid, and if you find that McWilliams & Co. actually

187 F.—17

made a bid for the work amounting to $297,000, and that this was the only bid submitted, and was the bid used by the contractor in submitting the estimate to the owner accompanying his letter of February 15, 1907. and if you find from the evidence that the plaintiffs recommended the acceptance of this bid, and did not disclose to the owner the agreement and contract between themselves and McWilliams & Co. concerning the matter, such action would be a fraud upon the owner, and justifies you in sifting and analyzing with caution the testimony of the plaintiff as given in the case. Therefore, in considering the evidence, you are to consider whether under the preponderance of the proof in this case it has been established that plaintiff did make the contract in question under the circumstances heretofore set out, and, if you find it was made, then you are to consider the same in weighing and judging the plaintiffs' evidence and in considering the credibility thereof"—which was also refused and exception duly taken.

And other special charges more or less bearing upon the issues in the case were requested and refused and exceptions duly taken.

Other matters shown by the record will be found in the opinion of the court.

Edwin T. Merrick, Henry P. Dart, and Benj. W. Kernan, for plaintiff in error.

Chas. Payne Fenner, for defendant in error.

Before PARDEE, McCORMICK, and SHELBY, Circuit Judges.

PARDEE, Circuit Judge (after stating the facts as above). [1] As the contract, which is the basis of the demands made in this suit, provides for separate items and the price is apportioned to each item, it is severable (see 2 Parsons on Contracts, 517), and it may be shortly stated as follows: To furnish the preliminary sketches for 1 per cent. on the cost of the building, and payable on the acceptance thereof; for the working drawings and specifications two per cent. and payable on completion; for supervision of the construction 2 per cent. to be paid pro rata with the architect's certificates issued during the progress of the work. It seems to be a conceded fact that the preliminary sketches had been made and substantially accepted prior to the execution of the contract in writing for compensation; and that prior to default $12,000 had been paid therefor leaving the sum of $3,000 due on that item. The contract was one of agency, and the general rules in regard to principal and agent apply.

[2] As to this particular agency, it is well settled that an architect employed to furnish the working plans and specifications and to superintend the construction of a building is the agent of the owner, and in such relation his first duty is that of good faith and loyalty to his principal; and hence he should have no pecuniary interest in the performance of the contract for the work assigned by him, nor can he act as the agent or representative of furnishers and contractors or receive from them any pay, remuneration, or compensation except with the full knowledge of his principal; and any breach of duty or good faith in this respect destroys his right to compensation and commission, not only on the ground of actual damage or prejudice to the principal, but on grounds of public policy. 2 Ency. Law, 815, 816; 34 Cyc., and cases cited.

We do not understand that these propositions governing the relation between the parties are at all disputed; the contention of counsel for the defendant in error being that under the particular facts

of the case they are not applicable here, and, if applicable, then they are to be restricted to the severable part of the contract which provides for commissions for superintending the work. The argument is that it was only in relation to the superintendence of construction that the arrangement with McWilliams & Co. could in any wise affect or prejudice the plaintiff in error.

The first bill of exceptions shows that the agreement admitted to have been made between Andrews & Co. and McWilliams & Co., under which the latter were to prepare the working plans and specifications covering the mechanical construction and equipment of the proposed hotel, was that, if the said McWilliams & Co. as bidders for that portion of the work should obtain the contract therefor, no charge would be made by them for their services, whereas, unless they did obtain the work, they should be paid by Andrews & Co. for their services 3 per cent. of the cost of the work; and, in regard to the matter, the same bill shows that the plaintiff offered evidence tending to prove that such an arrangement was customary among architects in the East where Andrews & Co. practiced their profession; that McWilliams & Co. were distinguished experts and mechanical engineers. and that the purpose and effect of the arrangement was to give the architects and the owners the benefit of their technical knowledge and experience; that McWilliams & Co. were not manufacturers, but purely mechanical engineers and contractors; that, except as manufacturers, no advantage as a bidder could result to McWilliams & Co. for preparing such plans and specifications; and that the fact that McWilliams & Co. would be the only bidder for the mechanical equipment could not have been known to Andrews & Co.

[3] So that we may take it as undisputed that the special arrangement was made, and, if it was in any wise in derogation of the duties owed by Andrews & Co. to the hotel company, then it deprived Andrews & Co. of all right to compensation under any part of the severable contract of employment in which the arrangement could have any bearing or influence. It needs no argument to show—in fact, counsel seems to admit—that that part of the contract for 2 per cent. for superintendence was clearly affected by, as they termed it in argument, "the indiscreet arrangement" made between Andrews & Co. and McWilliams & Co.; but, as to its effect upon that part of the contract which related to the furnishing of working plans and specifications, it is claimed that, under the explanatory evidence and facts proved, it could have had no effect whatever, for in regard to such plans and specifications it made no difference to the hotel company whether the actual work was done by Andrews & Co., or under their supervision by somebody employed by them; and that as McWilliams & Co. were not manufacturers, and, as no one knew how many bidders there would be for the mechanical equipment, the arrangement did not affect the bid, and therefore it did not affect the amount that the Hotel Building Company would have to pay for such mechanical equipment.

We cannot agree with these contentions. Under the contract of employment, the architects owed their best skill, judgment, and experience, and they had no power to delegate their duties. See 2 Ency. Law, p. 822. Under the arrangement, if McWilliams & Co. should

turn out to be the successful bidder for the mechanical equipment, Andrews & Co. would not have to pay for the work in drawing up the working plans and specifications for the mechanical equipment—a very large sum amounting to nearly $9,000—and yet they would get full pay therefor without having done the work. Under these circumstances, how could they give their best judgment and experience, to say nothing of good faith, in passing upon the working plans furnished by McWilliams & Co. or in advising their principal as to the best bid for furnishing and installing the mechanical equipment?

The fact that thereafter McWilliams & Co. were the only bidders for the mechanical equipment instead of aiding to relieve the architects by showing that no injury could have resulted rather tends to accent the suspicion that the law throws on the propriety and good faith of the admitted arrangement. We think it clear that the arrangement between Andrews & Co. and McWilliams & Co. as a matter of law based on sound public policy deprived Andrews & Co. of the right to recover at law compensation for furnishing the complete working drawings and specifications for the Audubon Hotel Company.

. The verdict of the jury was in favor of the plaintiff for $45,000 subject to a credit of $12,000. This verdict shows that the jury allowed compensation under that part of the severable contract providing for furnishing the working plans and specifications, and denied commissions for superintendence of construction; and this brings us to consider whether the errors relating to the trial judge's instructions to the jury are well taken. The judge's charge did not sufficiently and clearly cover the law of the case, but it was not specifically excepted to, and each one of the refused special charges is subject to criticism which warranted the refusal to instruct the jury as therein requested.

However, the necessity for more specific instruction in relation to the effect of McWilliams' agreement than that given in the charge of the court was called to the attention of the court and decidedly emphasized by the special instructions requested and as shown by the eighth bill of exceptions as follows:

"Evidence having been offered by the plaintiffs and the defendant tending to show the facts as set forth in bill of exception No. 1, and argument having been heard and the court having charged the jury as set forth in bill of exception No. 1, and having failed otherwise to instruct the jury upon the subject of the McWilliams & Co. agreement with the plaintiffs and the issue raised thereon, defendant then and there excepted in open court before the jury, and before the withdrawal of the same."

[4] And we are clear that under the admitted facts in the case, in the light of the specific instructions requested, the judge was called to give the substance of the refused charges discriminating as to the several items of the employment as to which, as a matter of law, the plaintiff could not be permitted to recover. See Robinson v. Green, 3 Metc. (Mass.) 159; Nitedals & Co. v. Bruster, L. R. 1906, 2 Chan. Div. 671, 673. And, further, that in omitting to instruct the jury under the admitted facts in the case and as a matter of law the plaintiff could not be permitted to recover any compensation for furnishing

working plans and specifications, nor for superintending the construction of the building, prejudicial and reversible error intervened.

The judgment of the Circuit Court must be reversed and a new trial granted, unless, indeed, the plaintiffs below shall within 20 days from filing mandate enter on the judgment in the Circuit Court a remittitur of $30,000, the amount of excessive recovery, in which case the judgment shall stand affirmed, the defendant in error to pay the costs of this court.

And it is so ordered and adjudged.