BOARD OF COM'RS OF KINGFISHER
COUNTY v. VAHLBERG.

No. 31714. April 1, 1947.

Rehearing Denied May 6, 1946.

180 P. 2d 144.

·Karl D. Cunningham and Roy H. Mead, County Atty., both of Kingfisher, for plaintiff in error.

Gilliland, Ogden, Withington & Shirk, of Oklahoma City, for defendant in error.

OSBORN, J. This action was brought by plaintiff, Walter T. Vahlberg, against the board of county commissioners of Kingfisher county, as defendants, to recover for services performed under an architect's contract. The case was tried to the court without a jury, and judgment was rendered for the plaintiff as prayed for in his petition. From the judgment the board appeals. The parties will be referred to herein as they appeared in the trial court.

There was no conflict in the evidence, and by it the following facts are established: On August 26, 1941, the defendant entered into a contract with plaintiff to draw plans and specifications for and supervise the erection of a new courthouse building for Kingfisher county in the city of Kingfisher, and for facing the jail building with new materials, grading and landscaping grounds, and other work incidental and appurtenant thereto. The contract, so far as pertinent to the question presented, is as follows:

"The owner agrees to pay the architect for such services a fee of Six (6%) per cent of the cost of the work, with other payments and reimbursements as hereinafter provided, the said percentage being hereinafter referred to as the 'basic rate.' Cost of the work shall mean the total cost stated in the W.P.A. project proposal, including the costs of equipment and inclusive of the value of re-used salvaged materials. See article 1 to 12, Inc."

"Payments to the architect on account of his fee shall be made as follows, subject to the provisions of art. 4:

"Upon completion of the preliminary studies, a sum equal to 20% of the basic rate computed upon a reasonable estimated cost.

"Upon completion of specifications

and general working drawings (exclusive of details) a sum sufficient to increase payments on the fee to 70% of the rate or rates of commission arising from this agreement, computed upon a reasonable cost estimated on such completed specifications and drawings, or if bids have been received, then computed upon the lowest bona fide bid or bids.

"From time to time during the execution of work and in proportion to the amount of service rendered by the architect, payments shall be made until the aggregate of all payments made on account of the fee under this article, but not including any covered by the provisions of article 4, shall be a sum equal to the rate or rates of commission arising from this agreement, computed upon the final cost of the work."

The "W.P.A. project proposal" was $227,325. A Works Progress Administration grant of $88,219 was requested, and on October 31, 1941, defendant was advised that the grant had been approved by the President. The county had on hand in cash and from the proceeds of a special tax levy some $70,000 and the remainder was apparently represented by the value of materials to be used out of the old courthouse, which was to be demolished and the materials therein used, as far as possible, in the construction of the new building.

Pursuant to the terms of this contract plaintiff prepared the preliminary plans and specifications, which were approved, and he was paid the 20 per cent of his 6 per cent fee, as specified in the contract, in the amount of $1,920. After such payment, pursuant to authorization of defendant, plaintiff prepared the final plans and specifications, which were approved by defendant and by the Works Progress Administration. He thereupon presented his claim for an additional sum which, with what he had already received, would equal 70 per cent of his 6 per cent fee. Defendant refused to pay the additional amounts and plaintiff brought this action. Apparently the defendant proceeded no further with its plan to erect the new courthouse. The record does not reflect the reason why payment of plaintiff's claim was refused.

In the lower court defendant alleged and attempted to prove that the contract with plaintiff was not legally entered into for the reason same was not entered into in the county clerk's office, but instead was entered into by the commissioners in a room adjoining the jail. The court found that such room was regularly used by them for the transaction of their public business. That defense is not urged in this court, but is wholly abandoned.

It must be borne in mind that this suit is not a suit for damages for failure of the board of county commissioners to complete the contract by the construction and erection of the contemplated building. Neither party so treated it in the trial court. On the other hand, both parties disavowed in the trial court any such theory, which plainly appears in the record. The trial court did not treat it as such. We quote from the record:

"The Court: Now, gentlemen, I think I have caught the theories of both the plaintiff and the defendant about this suit. It isn't the theory of the plaintiff that this is an abandoned project here at all? Mr. Firestone (County Attorney): No, sir. The Court: It is simply for the amount due under a provision of the contract at a certain stage of the proceeding? Mr. Ogden: Yes. The Court: It is not on the theory of an abandoned contract, or an abrogated contract by the county commissioners? Mr. Ogden: No. The Court: And I want to know if that is also the theory of the defendant? Mr. Firestone: I think that could be—would be my theory, your Honor. The Court: I think that is the theory of both parties. Mr. Ogden: If the court please, I believe— The Court: In other words, this is a suit to recover a pro rata part and portion of the commission to which the plaintiff would be entitled in the due progress of the contract? Mr. Firestone: Yes, sir. Mr. Ogden: That is correct."

The trial court clearly recognized the nature of the action as being founded

upon the terms of the contract rather than a suit for damages predicated upon a breach thereof. In rendering judgment he made the following analysis and findings:

"The suit is not for damages arising from failure to perform the contract. The evidence here shows that, owing to the conditions arising from the war, the project has been delayed on account, in all probability, of the difficulty of obtaining proper materials for the erection of the courthouse. It is not an abandoned contract at all. Merely, the activity has been delayed by the condition of the war; and I apprehend, when the war is over, that in all probability the project will be resumed from the place where it now is to its final completion. That being true, neither the plaintiff nor the defendant would be excused from or absolved from the duties arising from the execution of the contract. In other words, the rendition of a judgment for plaintiff here in this case would not relieve the plaintiff of the performance of his duty, arising under this contract, as an architect, upon demand of the board of county commissioners. Neither would it relieve the board of county commissioners from further proceedings in the completion of the contract, when the war conditions which make it impossible now to complete it have been eliminated. This suit is for 70% of the total amount due the architect for his total and complete services. The amount of recovery is based upon the estimated cost of the building, which, I understand is $227,325; and from that 70% there should be deducted the 20% which, under the contract, has already been paid to the plaintiff as partial compensation. So it is my opinion here, gentlemen, that there is nothing whatever for the court to do but to render judgment for the plaintiff for the amount prayed for, which I understand is $7,627.65; and judgment will go for the plaintiff for that amount. I presume it is understood, and it is the theory of both parties here, that the duties of the architect, the plaintiff here, still rest upon him to complete his duties upon demand of the board of county commissioners?— Mr. Ogden: Yes, sir; he is ready and willing— The Court: —When the courthouse project may be completed? Mr. Ogden: Yes, sir; and he is willing and anxious to do that."

Had plaintiff sued the board to recover the full amount of his total compensation as provided by his contract, instead of only the 70% of his named compensation which had been earned by full performance on his part at the time the board determined not to proceed further with said project, we would then be presented with the question as to whether or not the board pleaded and proved sufficient grounds for the discontinuance or abrogation of said contract, a question which we shall hereinafter briefly notice. It must be distinctly noted, however, that the plaintiff based his action only upon the liability set forth in the contract for work and services theretofore fully performed by him, compensation for which was specifically provided for by the contract.

We think the correctness of the trial court's judgment depends, therefore, upon a determination of whether the plaintiff's contract is entire or whether it is divisible and severable.

In 17 C.J.S. 785, § 331, it is said:

"As a general rule it may be said that a contract is entire when by its terms, nature, and purpose it contemplates and intends that each and all of its parts and the consideration shall be common each to the other and interdependent. On the other hand, it is the general rule that a severable contract is one which in its nature and purpose is susceptible of division and apportionment."

In section 334 (17 C.J.S., page 790), it is said:

"A test of severability which has frequently been applied is to the effect that, if the consideration is single, the contract is entire, but if the consideration is either expressly or by necessary implication apportioned, the contract will be regarded as severable, although this test will not necessarily prevail over other provisions of the contract showing a contrary intent of the parties. So, where the portion of the contract to be performed by one party consists of several and distinct items, and the price to be paid is apportioned to each item ac-

cording to the value thereof and not as one unit in a whole or a part of a round sum, the contract will ordinarily be regarded as severable, and this rule applies, although the contract may in a sense be entire, if what is to be paid is clearly and distinctly apportioned to the different items as such and not to them as parts of one whole."

See, also, City of Tecumseh v. Burns, 30 Okla. 503, 120 P. 270; Bianchi Brothers v. Gendron, 292 Mass. 438, 198 N. E. 767, 107 A.L.R. 953.

In 6 C.J.S. 309, § 14, it is said:

"A contract to prepare plans and specifications and superintend the erection of the structure for a fixed price is an entire one, and recovery cannot be had for a performance of part of the contract without a performance of the other part, or a sufficient excuse for the nonperformance. Where the different items are provided for separately, however, with specified prices for each, the contract is severable and recovery may be had for the performance of one item, although it cannot be had for the other."

In Audubon Bldg. Co. v. Andrews & Co. (5 Cir.) 111 C. C. A. 92, 187 Fed. 254, the first syllabus is:

"A contract employing an architect to furnish preliminary sketches for a building for a specified per cent of the cost of the building, payable on the acceptance of the sketches, to provide complete working drawings and specifications for a specified per cent payable on completion of the drawings and specifications, and to supervise the construction of the building for a specified per cent payable pro rata with the architect's certificates issued during the progress of the work, is a severable contract providing for separate items for a price apportioned to each item, and the architect may recover for one item, though he may not recover for another item."

In Dittoe v. Morgan, 207 Ky. 267, 268 S. W. 1065, the Court of Appeals of Kentucky held as follows:

"Under architects' contract, providing that they should receive 3 per cent of proposed cost of construction on completion of working drawings and specifications, and on receipt of bids an additional 1½ per cent, and a remaining 2½ per cent as work progressed, where work was abandoned on receipt of bids, held, architects were entitled to receive as compensation for services to that date 4½ per cent of proposed cost."

See Orth & Bro. v. Board of Public Education, 272 Pa. 411, 116 Atl. 366, 20 A.L.R. 1352, and annotation.

Adverting to the contract, it is to be noted that while the contemplated sum to be paid for the services of plaintiff was to be 6 per cent of the cost as therein defined, the parties agreed that 20 per cent should be paid "upon completion of the preliminary studies" (which was paid), and a further sum sufficient to increase payments on the fee to 70 per cent "upon completion of specifications and general working drawings." Thus the consideration for plaintiff's services was expressly apportioned by the parties in said contract, bringing the same within the terms of a severable contract. Since the plaintiff sued herein for only that portion of the compensation provided by the contract to be paid "upon completion of specifications and general working drawings," which services had been fully performed by plaintiff prior to the institution of said suit, and prior to any determination by the board not to go forward with the project, he was entitled to judgment for the percentage of his compensation as provided therein. In this connection we call attention to the fact that the contract itself provided a definition of "cost of work" by stating that it meant "the total cost stated in the W.P.A. project proposal." There was no contention by the parties before the trial court that the sum used by the trial court in determining the amount of plaintiff's judgment was not the correct sum, nor is there any contention in that regard in this court.

But in the briefs filed in this cause in this court the board makes two contentions which may be disposed of together. Briefly stated, they contend that the contract was based upon a contingency, namely, the obtaining of a grant

from the Works Progress Administration, and that plaintiff was not entitled to be paid for his services unless that grant was obtained. This contention is not based upon any fact pleaded in the trial court, or established by any evidence. Nor is the contention in any wise alluded to in the record. The record affirmatively shows the approval of a grant by the W.P.A. in the sum of $88,-219. There is nothing in the contract, pleadings or evidence from which it may be inferred that the parties to the contract contemplated that plaintiff was to be paid for his services only in the event said grant was received by defendant. In fact, the first payment of $1,920 by defendant to plaintiff upon completion of the "preliminary studies" is a strong circumstance refuting this contention. Such payment was a construction of the contract by the parties and strongly indicates their understanding of the same. McDowell v. Droz, 179 Okla. 119, 64 P. 2d 1210.

Defendant further contends that by reason of the declaration of war immediately following Pearl Harbor on December 7, 1941, and the passage of an Act of Congress on December 18, 1941 (50 U.S.C.A. § 601) authorizing the President "to make such redistribution of functions among executive agencies as he may deem necessary," the completion of the project became impossible of performance, and that a further Act of Congress enacted March 27, 1942 (50 U.S.C.A. § 633, sec. 2 (a) (7)), giving the government priorities, absolved them from any liability to plaintiff. The record is wholly silent as to any such contention in the trial court. From recitals contained in the brief, however, we gather that on December 15, 1941, the board met and rejected all bids which had been received on said project, and voluntarily determined not to proceed further therein. We think the contentions raised herein have no application to the determinative questions, and since we have hereinabove determined that the contract was severable, and since the services had already been performed by plaintiff prior to the voluntary abandonment of the project by the defendant, said contention, even if same had been properly presented in the trial court, would be without merit as a defense herein.

We are not herein confronted with a change of theory by plaintiffs in error from a theory presented in the trial court as recognized in the case of First National Bank of Alex v. Southland Production Co., 184 Okla. 9, 112 P. 2d 1087. The record herein, and above set forth, does not present another theory either in the trial court or in this court.

Nor do the parties contend that the contract entered into with plaintiff is invalid on account of the absence of funds on hand to carry out the project of construction. It is admitted that more than $70,000 was on hand which, with the approved allocation from the W.P.A. of $88,000 and the use of the salvaged materials from the old building, was a sum adequate for the purpose intended. In Board of County Commissioners v. A. C. Davis & Sons, 184 Okla. 258, 86 P. 2d 782, we said:

"Where there is a sufficient amount of money on hand that may be legally used for the building and equipping of a county courthouse and jail to pay for architects' services in preparing plans and specifications, the board of county commissioners may legally contract for the payment of the same out of said money."

Affirmed.

DAVISON, V.C.J., and RILEY, BAYLESS, CORN, and GIBSON, JJ., concur. HURST, C.J., and WELCH and ARNOLD, JJ., dissent.

---

HURST, C.J. (dissenting). I dissent for the following reasons:

1. The rule followed by the majority opinion that a cause will not be considered in this court on a theory not presented in the trial court does not apply to this case, which involves public rights.

Shaffer Oil & Refining Co. v. County Treasurer, 175 Okla. 6, 52 P. 2d 76; First National Bank v. Southland Production Co., 189 Okla. 9, 112 P. 2d 1087; 3 C. J. 742; 4 C.J.S. 485; 3 Am. Jur. 35.

2. The plaintiff does not point to a statute under which the contract could be made with the architect prior to the accumulation of the fund sufficient to pay for the courthouse and repair of the jail, as is his duty. Board of County Com'rs v. Johnston, 192 Okla. 203, 134 P. 2d 335. A portion of the funds were to be raised by an extra levy under 19 O. S. 1941 § 731. That section requires that the proposition submitted to the people to authorize the special levy state the sum desired to build the courthouse. The proposition submitted stated the sum to be $58,085.77, not $227,325, which is the estimated cost on which plaintiff's fee is based, and did not advise the people that W.P.A. money and the salvage value of the old courthouse were to be considered in estimating the cost of the building. See, in this connection, Borin v. City of Erick, 190 Okla. 519, 125 P. 2d 768, and art. 10, sec. 19, Constitution. 19 O. S. 1941 § 732 requires that the fund be accumulated before a contract can be made for the erection of the building. These sections were not complied with. I believe the contract with plaintiff was void because the conditions precedent prescribed by these sections were not complied with (15 C. J. 540; 14 Am. Jur. 209), and it is certain that the contract was not ratified by the accumulation of the fund and use of the plans, as in Board of County Com'rs v. A. C. Davis & Sons, 184 Okla. 258, 86 P. 2d 782, where we did not consider the effect of section 732, and which should have been based upon ratification.

But, assuming that the contract was valid when made, it is my view that the record supports the contention of the county that the contract was an entire, not a severable, one, and that the parties so intended it. The contract called for a total fee to the architect for making the plans and specifications and supervising the construction amounting to 6 per cent of the cost of the completed work, payable in installments to be applied "on account of his fee." It did not, as the majority holds, provide that he should have three separate fees, one for the completion of the preliminary studies, one for the completion of the specifications and general working drawings, and one for supervision. The county was interested only in completed structures, not in the preliminary studies or finished plans and specifications as such. In fact, the architect specifically retained title to the plans and specifications. The provision for payment of installments related to the time of making such payments, not to the compensation for any particular portion of the services. The fact that the fee was payable in installments does not, as the majority opinion holds, make the contract severable. 9 Am. Jur. 13; 12 Am. Jur. 875; 9 C. J. 713; 17 C.J.S. 791.

It is clear that both contracting parties had in mind completed structures and that, in order to complete them, it would be necessary to receive a portion of the funds from the W.P.A. The plaintiff does not contend, and offered no proof to establish, that any money was ever received from the W.P.A., and does not deny the statement of the county that said money was not received. It seems clear from the sequence of events that the county commissioners concluded that because of the outbreak of war just a few months after the contract was made, it would be unwise and impracticable to tear down the courthouse and take the chance of not being able to procure the labor and materials necessary to complete the structures in the forseeable future. And it would seem that the county commissioners had in mind the best interests of the nation, and were actuated by patriotic motives, in the steps taken. We know that from the time war was declared the energies of all patriotic people were directed towards preserving the life of the nation and preparing for and waging all-out war. Soon after the

commencement of War Congress enacted 50 U.S.C.A. §601, authorizing the President "to make such redistribution of functions among executive agencies as he may deem necessary", and some time thereafter the W.P.A. ceased to exist.

The county commissioners acted reasonably in assuming that, because of the changed conditions, it would be impracticable or impossible to get the W.P.A. funds and complete the work. Under such circumstances it is well settled that the county was excused from carrying out the contract. Gosden Oil & Gas Co. v. Moss, 131 Okla. 49, 267 P. 855; Potts Drug Co. v. Benedict, 156 Cal. 322, 104 P. 432, 25 L.R.A. (N.S.) 609; Hipp v. Fidelity Mutual Life Ins. Co., 128 Ga. 491, 57 S.E. 892, 12 L.R.A. (N.S.) 319; Krause et al. v. Board of School Trustees, 162 Ind. 278, 70 N.E. 264, 102 Am. St. Rep. 203, 65 L.R.A. 111, 1 Ann. Cas. 460; 13 C.J. 642; 17 C.J.S. 956; 6 R.C.L. 1005; 12 Am. Jur. 953, 954. This rule, which applies to private rights, should certainly be applied when public rights, as here, are involved. In interpreting contracts made by the state or counties, doubt as to their meaning is to be resolved in favor of the public. 59 C.J. 184; 20 C.J.S. 1034; Henry Shenk Co. v. Erie County, 319 Pa. 100, 178 Atl. 662.

Assuming further that the contract is not void, is an entire and not a separable one, and that the fee already paid is not, under the circumstances, adequate for the work done, it is possible that the plaintiff could get relief on the theory of quantum meruit. See Williston on Contracts, Revised Edition, §1977; Page on Contracts, §2714. In fact, the plaintiff offered to prove the value of the services on a quantum meruit basis, thus recognizing that his right to recover according to the contract was doubtful, but the trial court rejected such offer.

The result of the majority opinion is to take from the county $7,627.65, in addition to the $1,920 previously paid, for the decision made by the county commissioners, in the stress of war, actuated by patriotic motives and a desire to serve the best interests of the county. The county is required to pay a fee based upon W.P.A. funds amounting to $88,219 that have not been, and will probably never be, received now that the W.P.A. is no longer in existence, and also based upon the salvage value of the old courthouse in the sum of $68,989.94, which the county points out was constructed in 1901 at a contract price of $29,755.

ARNOLD, J. (dissenting). The contract between Vahlberg and Kingfisher county provides with reference to payments on the fee to be paid the architect:

"Upon completion of the preliminary studies, a sum equal to 20% of the basic rate computed upon a reasonable estimated cost.

"Upon completion of specifications and general working drawings (exclusive of details) a sum sufficient to increase payments on the fee to 70% of the rate or rates of commission arising from this agreement, computed upon a reasonable cost estimated on such completed specification and drawings, or if bids have been received, then computed upon the lowest bona fide bid or bids."

Bids were advertised for and received by the county commissioners. The recovery of Vahlberg in any event could only be based upon the lowest bid received. The judgment obtained is based upon the anticipated cost set forth in the W.P.A. proposal. The failure of the plaintiff to make the essential proof necessary in this respect requires, in my judgment, a reversal of this case.