WALTER A. BARROWS, 3d, *vs.* HOWARD E. FULLER & another.

Suffolk.    March 4, 1925. — June 25, 1925.

Present: RUGG, C.J., CARROLL, WAIT, & SANDERSON, JJ.

*Equity Pleading and Practice*, Master: findings and inferences; Appeal. *Contract*, Construction.

On an appeal by the defendant in a suit in equity from an interlocutory decree, overruling his exceptions to the report of a master which did not contain a report of the evidence but did contain a statement by the master that the "conclusions which I reached are based solely upon the facts and evidence stated by me. . . . The inferences from the evidence

before me . . . seem to me to be the only ones consistent with the
nature of the contract"; and from a final decree based on the report, it
is the duty of this court to draw the proper inferences from facts found
by the master uninfluenced by the conclusions of the trial judge and of
the master, although the inferences so drawn may differ from those
drawn by the master or by the trial judge.

The proprietor of a business which he was about to incorporate offered
to pay a prospective employee a certain salary and to convey to him
five per cent of the stock of the corporation when it was organized,
such stock to be paid for by the employee at par out of dividends paid
by the corporation and "by such other payments as" he "should be
able to make." To induce the employee to make the contract, the
proprietor pointed out to him that a larger salary could not be paid
at that time and that he "must rely upon the opportunity given him
to acquire stock in the company, through the earnings to be applied
for that purpose, as his additional compensation." The offer was
accepted, no agreement being made as to the length of time the em-
ployment should be continued. Later the corporation was organized
and two hundred shares of the par value of $100 were issued to the
employee, and he was elected a director, but his certificate was retained
by the employer for over a year when, at the request of the employer,
the employee signed a note for $20,000 and indorsed the certificates in
blank and left them in the employer's possession, the employer explain-
ing that the stock belonged to him, the employer, and that it was to
become the employee's "only as it was paid for out of the earnings of
the company or otherwise under their arrangement." Dividends
amounting to $3,000 and bonuses amounting to over $600 were credited
on the note. After continuing in the employment over three years,
the employee resigned and by a suit in equity against the employer
sought cancellation of the note and delivery of $3,600 worth par value
of the stock. *Held*, that

(1) The contract was severable;

(2) The plaintiff's right to possession of the shares paid for was not
dependent upon his remaining in the employ of the corporation;

(3) The circumstances, that the duration of employment was not
limited and that the period during which the dividends would be pay-
able could not be fixed in advance, were not sufficient to negative the
intention that the contract was divisible;

(4) The fact that the plaintiff testified that the defendant was to
retain the certificates until fully paid for was not conclusive that the
contract was indivisible;

(5) The plaintiff was entitled to the relief sought.

BILL IN EQUITY, filed in the Supreme Judicial Court for
the county of Suffolk on March 10, 1924, and afterwards
amended, seeking a decree directing the defendants Howard
E. Fuller and E. Arthur Tutein to cancel and surrender a
note for $20,000, described in the opinion, and to transfer
to the plaintiff certain shares of the stock of the corporation,

E. Arthur Tutein, Incorporated, for which the note was given.

The suit was referred to a master.  The master found that on November 1, 1919, the plaintiff entered the employ of the defendant Tutein under an agreement by Tutein to pay him $3,600 a year and to give him five per cent of the stock of a corporation which he was intending to organize for the conduct of his business, such stock to be paid for by him at par out of the dividends paid by the corporation upon such stock and by such other payments as he should be able to make. The corporation was organized in January, 1920.  Two hundred shares of its stock were issued in the plaintiff's name, but possession of the certificate was retained by the defendant Tutein.  Aside from these shares and four hundred shares set apart under similar agreements for two other employees, the entire stock of the corporation was owned by Tutein without restriction.  The plaintiff was elected a director in 1920 and in 1921.  The note described in the opinion was signed by the plaintiff in 1921.  When offered in evidence, it had indorsed on it payments of $1,000 each on account of dividends dated August 25, 1920, January 15, 1921, and December 21, 1922, and a bonus of $613.34 dated December 31, 1920.

Other material findings of fact by the master are described in the opinion.

Exceptions by the defendant to the master's report were heard by *Crosby,* J., and by his order there were entered an interlocutory decree overruling the exceptions and confirming the report and a final decree ordering the cancellation of the note, delivery by the defendant Tutein to the plaintiff of thirty-six shares of the stock of the corporation in question, and that the defendant Tutein pay the plaintiff $13.34 and costs of suit.  The defendants appealed from both decrees.

*R. G. Dodge,* (*W. A. Kneeland* with him,) for the defendants.

*D. F. Carpenter,* for the plaintiff.

CARROLL, J.  The plaintiff seeks in this suit in equity, to have the defendant Tutein ordered to surrender a certain note for $20,000 (in the possession of the defendant Fuller), and also ordered to deliver to the plaintiff a certain number

of shares of stock of E. Arthur Tutein, Incorporated. The case was referred to a master and is before us on the defendant's appeal from the final decree in favor of the plaintiff, and from an interlocutory decree confirming the master's report and overruling the defendant's exceptions to it.

The defendant Tutein (hereinafter referred to as the defendant) employed the plaintiff in behalf of E. Arthur Tutein, Incorporated at a salary of $3,600 a year, and agreed to set aside for him five per cent of the stock of the corporation, to be paid for at par out of the dividends paid by the corporation upon the stock, and "by such other payments as" he "should be able to make." The authorized capital of the corporation was $400,000. The plaintiff began his employment November 1, 1919. In February, 1921, the plaintiff signed a note for $20,000, payable to the defendant. The defendant then handed to the plaintiff for his indorsement in blank five certificates for a total of two hundred shares of the stock, issued in the plaintiff's name, but held by the defendant. At this time the note for $20,000 was signed by the plaintiff, but was dated May 3, 1920. Three thousand dollars have been paid in dividends and $613.34 in the form of bonus, and indorsed on the note. In December, 1923, the plaintiff resigned from the corporation. The main question for decision is whether the contract with respect to the shares is severable, so that the plaintiff is now entitled to thirty-six shares of the stock; or whether he is entitled at most to $3,613.34 in cash as the defendant contends.

The master found the facts. He found that the right of the plaintiff to have dividends applied in payment of shares, or to make payments in cash for the stock, ended on the termination of his employment; that the two hundred shares set aside for the plaintiff were to become his, a share at a time, as paid for by him by the application of dividends or otherwise; that the plaintiff was entitled to have delivered to him thirty-six shares of the stock of the corporation. The master stated in his report that the "conclusions which I reach are based solely upon the facts and evidence stated by me. . . . The inferences from the evidence before me . . . seem to me to be the only ones consistent with the nature of the contract."

It is our duty to draw the proper conclusions from the facts stated in the report. When findings of the master rest upon inferences drawn by him from the facts found, as in the case at bar, this court, on appeal, must draw the proper inferences, uninfluenced by the conclusions of the trial judge and the master, although our conclusions may differ from those reached by them. *Hawkes* v. *Lackey,* 207 Mass. 424, 431. *Smith* v. *Kenney,* 213 Mass. 6, 8. *Caines* v. *Sawyer,* 248 Mass. 368, 373. *Nichols* v. *Atherton,* 250 Mass. 215.

Whether a contract is entire or divisible is largely a question of the intention of the parties. *Barlow Manuf. Co.* v. *Stone,* 200 Mass. 158, 160. Did the parties intend that the shares were to belong to the plaintiff only upon payment to the amount of $20,000 during his employment, or did they intend that the shares belonged to the plaintiff as paid for by the application of dividends or otherwise? The intention is to be gathered from the language of the parties, the subject matter, and the accompanying circumstances so far as competent. *Zembler* v. *Fitzgerald,* 234 Mass. 236, 244. See *Producers Coke Co.* v. *Hillman,* 243 Penn. St. 313.

In our opinion the master was correct in finding that the contract was severable; and the decree in favor of the plaintiff was right. When negotiations opened between the plaintiff and the defendant, the plaintiff was receiving $3,600 a year, and objected to entering the employ of the corporation, because he thought the proposed salary, considering all the conditions, amounted to less compensation than he was then receiving; whereupon the defendant, according to the findings of the master, pointed out to the plaintiff that a larger salary could not be paid at present, that he "must rely upon the opportunity given him to acquire stock in the company, through the earnings to be applied for that purpose, as his additional compensation." This language very strongly indicates that, as the corporation earned money, its dividends were to be applied in payment of the stock, share by share; that the stock was to belong to the plaintiff in addition to his salary, and it was this that induced him to enter the employment of the corporation. The plaintiff was informed by the defendant that five per cent of the stock

was to be set aside for him. He could have bought the stock at any time by paying $20,000. The stock was issued in the plaintiff's name. When the note for $20,000 was made, the defendant handed the five certificates to the plaintiff and requested him to indorse them in blank, explaining that this stock belonged to him (the defendant) and that it was to become the plaintiff's "only as it was paid for out of the earnings of the company or otherwise under their arrangement."

It was no part of the agreement that the plaintiff should continue in the employ of the corporation for a definite period. If the plaintiff was discharged, he could not be deprived of the stock, and if he resigned, as he had the right to do, the stock was not to be taken from him. It seems to be conceded that the plaintiff was entitled to the amount of the dividends in cash; but this was not the contract of the parties. The contract called for shares of stock. They might be worth more than $3,600, or if worth less than that amount, it was the stock and not the dividends that the defendant agreed to deliver to the plaintiff. Taking all the evidence, we are satisfied that the contract was severable. The right to possess the shares was not dependent upon the plaintiff's remaining in the employ of the corporation. As already pointed out, he had the right to pay for the shares in cash on the day they were issued. See *Barlow Manuf. Co.* v. *Stone, supra.* See also *White* v. *Atkins,* 8 Cush. 367, where the plaintiff by a contract agreed to work for a specified term. It was there said by Shaw, C.J., page 370, ". . . but the performance of this entire contract was not a condition precedent to the plaintiff's right to recover any thing, because the plaintiff was, at his option, entitled to receive his pay monthly." The circumstance that the duration of employment was not limited and the period during which the dividends would be payable could not be fixed in advance, is not sufficient to negative the intention that the contract was divisible. See *Taylor* v. *Laird,* 1 H. & N. 266. *Button* v. *Thompson,* L. R. 4 C. P. 330.

We find nothing in *Robinson* v. *Hall,* 3 Met. 301, *Weed* v. *Clogston,* 98 Mass. 147, *Fullam* v. *Wright & Colton Wire Cloth*

*Co.* 196 Mass. 474, and similar cases cited by the defendant, contrary to our decision. The intention of the parties governs: it may show the contract to have been entire or, as in the case at bar, that it was severable.

The fact that the plaintiff testified that the defendant was to retain the certificates until fully paid for is not conclusive that the contract was indivisible. The suggestion that, if a dividend of $1,000 were declared on the stock the day after making the agreement, it could not be said to be within the contemplation of the parties that, on the plaintiff voluntarily leaving the employment at this time, he would be entitled to a certificate of ten shares, is not controlling. It may be said that the agreement is to be construed on the supposition that it would be lived up to and not broken. See *Taylor* v. *Laird, supra.*

Taking all the facts and circumstances bearing on the intention of the parties, the plaintiff has made out a case for relief in equity. He is not asking to be taken into partnership with the defendant; he is asking for the property which belongs to him under the contract. The stock in question is not readily obtainable in the market. *New England Trust Co.* v. *Abbott,* 162 Mass. 148. It is not contended that the plaintiff is not entitled to a surrender of the note.

*Decree affirmed with costs.*