BIANCHI BROS. INC. & others *vs.* ALCIDE J. GENDRON & others.

Worcester.    September 23, 1935. — November 25, 1935.

Present: RUGG, C.J., CROSBY, PIERCE, FIELD, & LUMMUS, JJ.

*Contract,* Construction, In writing, Building contract.    *Municipal Corporations,* Security for public work.

Where a written building contract with a city provided for the doing of the work listed in a schedule for a stated price, and that in a certain event, which happened, the contractor should also do the work listed in a second schedule for an additional price stated, the additional work to be done in conformity to "all the terms of the main contract," there were two separate contracts, one for the work listed in the first schedule and the other for that listed in the second schedule, not one entire contract for all the work, though the writing also provided that the bond furnished by the contractor under G. L. (Ter. Ed.) c. 149, § 29, should be in an amount equal to the total of both the stated prices; and a provision for retention by the city of a percentage of money due the contractor until after the completion of the work did not require retention of such percentage of the first price stated until after the completion of all the work, but merely until after the completion of that listed in the first schedule.
A sworn statement of claim filed under G. L. (Ter. Ed.) c. 149, § 29, was not invalid on the ground that it set forth two separate claims respecting two different construction projects for the same municipality.

TWO BILLS IN EQUITY, filed in the Superior Court on November 9, 1932, and November 22, 1932, and afterwards consolidated.

The decrees described in the opinion were entered by order of *Qua,* J.  The defendant Standard Surety and Casualty Company appealed.

*W. R. Donovan,* for the defendant Standard Surety and Casualty Company.

*M. Cohan,* for the plaintiff Nagel.

*A. M. Hillman,* Assistant City Solicitor, for the city of Worcester.

PIERCE, J.   Several suits in equity were brought under G. L. (Ter. Ed.) c. 149, § 29, by plaintiffs and interveners

to enforce claims for labor performed and materials furnished for the construction of two buildings for the city of Worcester. The defendants are Alcide J. Gendron, the general contractor, the Standard Surety and Casualty Company of New York, the surety on the bond given by Gendron to the city of Worcester, and the city of Worcester, which has in its hands and possession money earned by Gendron under the contracts. The work performed consisted in the construction of two buildings, one known as the "sewer building" and the other as the "school house," and was performed under separate contracts. The only matter here in controversy relates to the work done on the "school house." The two suits arising out of work done on the school house were consolidated by an interlocutory decree in the Superior Court. The suits were referred to a master under the usual rule. The master made findings in detail as to the amount due each of the claimants.

The appellant in its brief states, and we assume the statement is accurate, that "The claims of the original petitioners and of all intervening petitioners as established by the final decree herein appealed from, with the sole exception of the claim of Israel Nagel, have been settled, those appearing in paragraph 2 of said decree, since the trial of this action, through the payment by defendant Standard Surety & Casualty Company of New York." This concession of the appellant leaves open only the claim of said Nagel and the claim of the defendant surety against the defendant city, the surety alleging to have been damaged through the failure of the city to retain fifteen per cent of the final contract price, after due allowance had been made for all proper extras and deductions, "$114,865 . . . or $17,229.75, as well as the sum of $7,045.81 retained by the said city under an optional clause in said contract authorizing but not requiring it to retain out of funds otherwise due said contractor sums sufficient to discharge any liens or other unpaid claims for labor and materials of which it should have knowledge, at the time such payments were otherwise due . . . as required by the terms of said contract between said city and said contractor." The appellant further con-

tends that a payment of $10,200 from said retained percentage, being the final payment on list #1 under said contract on July 20, 1932, was an overpayment or premature payment by the city to the contractor, and it claims to have been damaged to said amount through failure of the city to retain that sum so that the same might be available to it for its indemnification and reimbursement, and applied in diminishment of its losses through its having expended the sum of $29,398.18 in discharging valid and enforceable liens, as, it is contended, the city was obligated to do, by the terms of the contract.

An interlocutory decree in the Superior Court confirmed the master's reports and a final decree dismissed the surety's claim against the city. The said surety appealed from the rulings of law made by the judge, from all interlocutory decrees entered thereunder, and from the final decree.

On the principal issue of the overpayment or premature payment of $10,200, from the contract itself (incorporated in the record as an exhibit) and the master's reports the following facts appear: By an instrument dated June 2, 1931, Alcide J. Gendron contracted to build the "shell" of a school house which was to be known as the Heard Street School. Under article I of said contract there is the provision: "All of the work to be performed under this contract is set forth on List #I hereto attached, which drawings and specifications and bulletins are made a part of this contract and identified by the signatures of the parties hereto." After certain provisions relative to the manner in which the work was to be carried on, article XV is as follows: "It is hereby mutually agreed between the parties hereto that the sum to be paid by the City to the Contractor for said work and materials shall be $68,000.00 . . . subject to additions and deductions as hereinbefore provided, and that such sum shall be paid in current funds by the City to the Contractor in installments, as follows: The cost of labor and materials incorporated into the building during each month shall be paid on the twentieth day of the succeeding month, except fifteen per cent, thereof shall be retained each month by the City until the

expiration of the contract, and until all of its conditions and specifications shall have been fulfilled by the Contractor, and provided that all monthly bills shall be presented by noon of the first day of the month next succeeding, and presented in duplicate, and duly approved by the City Auditor of the City of Worcester. The payments shall be made according to the attached List #I on a 'percentage of work done' basis." Then follows a detailed "Estimate of materials and labor to complete Heard Street School as per proposal for shell" totalling $68,000. "The final payment shall not be made within sixty-one days after this contract is fulfilled. No payment shall be made without the written certificate of the Architects to the effect that such payment has become due. If at any time there shall be evidence of any lien or other claim for which, if established, the City or the said premises might become liable, directly or indirectly, and which is chargeable to the Contractor, the City shall have the right to retain out of any payment then due or thereafter to become due an amount sufficient to completely indemnify its [sic] against any such claim. Should there prove to be any such claim after all payments are made, the Contractor shall refund to the City all moneys that the latter may be compelled to pay in discharging any such claim made obligatory in consequence of the Contractor's default."

At the end of the contract, before the signatures thereto, the following paragraph appears: "It is further mutually agreed that if the City of Worcester appropriates sufficient money therefor on or before December 31, 1931, that the Contractor will complete said Heard Street School by furnishing all the labor and material necessary to do all the work enumerated on List #2, attached hereto and made a part hereof, for the additional price of $44,865.00. All the additional work contemplated by this paragraph shall be performed in full compliance with the plans, specifications and bulletins referred to above and all the terms of the main contract." Next follows detailed "Estimate of materials and labor to complete Heard St. School as per proposal #2." By letter dated February 4, 1932, the superintendent of

public buildings of the city of Worcester notified Alcide J.
Gendron of the appropriation of money by the city for the
work under list #2 as follows: "You are advised that the City
Council appropriated sufficient money to complete the
Heard Street School, December 21, 1931, approved by the
Mayor, December 23, 1931. According to the contract
which you have with the City of Worcester and as stated
in that contract on Page 5, following Art. XXIV, then you
are to furnish all the labor and material necessary to do all
the work enumerated on List #2, attached to and made a
part of your contract for the sum stated in said contract.
By the appropriation of the money, List #2 is made a part
of the main contract and is subject to all the terms, agree-
ments and conditions of the main contract. You are,
therefore, authorized to proceed and finish the Heard
Street School, all according to plans, specifications, addendas
and bulletins."

The main contract contains a provision as to the bond
given by the surety company, which reads: "Witnesseth
that the Contractor, in consideration of the payments here-
inafter mentioned, and of the fulfillment of the agreements
herein mutually entered into, the performance of his agree-
ment being secured by a bond in the sum of . . . [$112,865],
bearing date the 2nd day of June 1931, and hereunto an-
nexed, agrees with the said City as follows . . . ." The
bond itself recites: "The condition of this obligation is
such that whereas the said Principal has entered into the
contract with the City of Worcester bearing date the 2nd
day of June 1931, to which this bond is annexed. Now
Therefore, if the said Alcide J. Gendron shall well and
faithfully perform all the terms and conditions of the said
written contract on his part to be kept and performed as
therein stipulated, and shall pay for all labor performed or
furnished and for all materials used in the fulfillment of
said contract, then this bond shall be void, otherwise it
shall remain in full force and effect."

The work done under list #1 having been completed on
April 1, 1932, the city of Worcester on July 20, 1932, paid
the contractor $10,200, that amount being the fifteen per

cent withheld by it until the completion of the work. The work under list #2 was completed on November 4, 1932. The city of Worcester still retains fifteen per cent of the price of this work ($7,029.75), together with $7,045.81, the latter amount having been retained because of the filing in the office of the city clerk of claims in excess of that amount by materialmen prior to September 20, 1932. The surety company contends that the $10,200 paid Gendron after the completion of the work under list #1 should have been retained until all the work including that under list #2 had been completed. After a recommittal of the master's report for further findings upon the claim of one of the interveners, the reports were confirmed. The surety company duly appealed. On the issue of the premature payment of $10,200 by the city of Worcester the trial court ruled that by the contract properly interpreted the city was entitled to pay Gendron the $10,200 paid to him upon the completion of the work under list #1, and that the contract did not require the city to hold back that amount until the work under list #2 had also been completed. By the decree of the trial court the amount of payments due to each claimant is established and the surety is ordered to pay such claims beyond the sum held by the defendant city of Worcester.

As above stated, the surety company in its brief presents to this court only the issue as to the premature payment by said city, and the question whether one of the plaintiffs, Nagel, filed a proper notice of claim. On the first issue the said surety company contends that the work to be done under list #1 and list #2 was a part of a single and indivisible contract and that the fifteen per cent of the price for the work under list #1 should have been retained until the completion of all the work under both lists. In determining whether a particular transaction results in one entire contract or in several separate contracts the "intention of the parties [is] to be ascertained from the whole instrument, viewed in connection with the conditions when the contract was made" and this intention must control. *Cumberland Glass Manuf. Co.* v. *Wheaton*, 208 Mass. 425, 434.

The inquiry is whether the parties reached an agreement regarding the various items as a whole or whether the agreement was reached by regarding each term as a unit. 2 Williston on Contracts, § 863. The mere fact that the transaction is set forth in one document is not alone sufficient to require the result that there is a single entire contract. *A. K. Young & Conant Manuf. Co.* v. *Wakefield,* 121 Mass. 91, 92. See *Hughes* v. *Rendle Corp.* 271 Mass. 208, and cases cited. An important factor in the determination of the question is whether the consideration is stated to be given for each part as a separate unit or whether there is a single consideration covering the various parts. Compare *Robinson* v. *Green,* 3 Met. 159, 161, *Barlow Manuf. Co.* v. *Stone,* 200 Mass. 158, 160, and *Barrows* v. *Fuller,* 253 Mass. 79, 84. In the case at bar the first document, dated June 2, 1931, shows clearly that the work contemplated under it related solely to work covered by list #1. As quoted above, article I contains the words "All of the work to be performed under this contract is set forth on List #1 hereto attached." Under article XV the price to be paid, $68,000, is the agreed price for the work which was to be done under list #1, and the provision for payments under the same article clearly refers to work to be done under list #1. It is only in the very last paragraph that any mention is made of work to be done or that may be done under list #2. That paragraph merely gives the city of Worcester an option to have the work under list #2 performed. There was and could be no contract with said city as to list #2 unless the city obtained the appropriation. The contract for the work under list #1 was in no way dependent on the formation of a contract under list #2. Nor was it a transaction where, no formal contract having been made, work was commenced and additions were agreed upon as the work progressed, as in *Rich* v. *Arancio,* 277 Mass. 310, 311. Whatever happened as to the work under list #2 the agreement respecting the work under list #1 was complete. The words in the last paragraph of the instrument of June 2, 1931, with reference to the work under list #2 reading "All the additional work contem-

plated by this paragraph shall be performed in full compliance with the plans, specifications and bulletins referred to above and all the terms of the main contract" are not inconsistent with the theory that the parties intended the lists numbered one and two to operate as divisible contracts. The quoted words can reasonably be interpreted to mean that the contract as to the work under list #2 was to be interpreted to contain the same terms, so far as applicable, as did the contract concerning the work under list #1, except that in this paragraph the price for the work under list #2 was separately stated to be $44,865. In all the circumstances here disclosed we think that list #1 and list #2 were separate contracts and did not constitute one entire contract. It is true that the instrument of June 2, 1931, provided that a bond should be furnished in an amount large enough to cover work to be done under both lists, but that fact alone does not require an interpretation of the contract at variance with the whole framework of the agreement. Under the interpretation that the contract was divisible it follows that the money due under the contract covering list #1 was to be retained only until after the completion of the work under list #1 and that the said city's final payment of $10,200 under the contract was not an overpayment nor a premature payment but was a payment in strict compliance with the terms of the contract.

Even if it be admitted that the agreements as to the work under the two lists constituted one entire contract, it would not follow that the said surety was damaged by said overpayment, or premature payment, through the failure of the city to retain the sum of $10,200 so that the same might be available for the surety's indemnification and might be applied by it in diminishment of its losses. A contract may be entire in the sense that there is but one agreement covering all the terms and yet it may be that the performance under the contract will be divided into different groups, each set embracing performances which are the agreed exchange for each other, the result being that the contract is entire but divisible. *Badger* v. *Titcomb*, 15 Pick. 409, 414.

*Denny* v. *Williams*, 5 Allen, 1, 4.   *Nickel* v. *Zeitz*, 258 Mass. 282, 285.   Am. Law Inst. Restatement: Contracts § 266 (3).   2 Williston on Contracts, § 861.   See as to divisibility of contracts *Lord* v. *Belknap*, 1 Cush. 279, 284; *Barrie* v. *Earle*, 143 Mass. 1, 5.

Since payment for performance under list #1 was separate from that under list #2, it follows that the former payment would in ordinary circumstances become due upon completion of the part of the work done under list #1. Upon this theory, the clause relative to the retention of payments, referring to a complete unit of performance, is reasonably to be interpreted to require the city to withhold money for that performance only until it was completed, and not until a subsequent and separate performance was completed.   Under this theory the payment of the money on the completion of the work done under list #1 could not be held to be an advance payment, an overpayment or a premature payment.   Indeed it makes little difference as to which theory be adopted, as the intention of the parties is plain that the money withheld by the city under list #1 was to be retained only until the completion of the work under list #1.

Respecting the claim of Israel Nagel, the surety company contends that there can be no recovery since he failed, as it alleges, to file a proper notice of claim as required by the statute.   Nagel performed work both on the school house and on the sewer building.   In filing his claim for money due for labor performed and materials furnished on the buildings Nagel set forth both claims in one written notification.   Despite the fact that the amount due under each contract and the work done thereunder were accurately set forth, the surety company contends that there was no valid claim filed as to labor and material furnished under the contract.   With reference to the statute requiring a sworn notice of the claim to be filed, it has been said that the statute does not require useless and vain formalities and that the word "file" as there used is equivalent to the words "give notice to the officers."   *Powers Regulator Co.* v. *Taylor*, 225 Mass. 292, 298.   We think that the notice

as filed by Nagel, setting forth the claims separately in one paper, sufficiently gave notice of both claims. Nagel in his notice of claim under the school house contract set forth $976.75 as the amount due, and the decree provided for the payment of that amount. Nagel makes no claim that his recovery should be in a slightly larger amount which the master found to be due, but asks that the decree be affirmed. It is unnecessary to decide the question argued by the surety company that the plaintiff Nagel's recovery was limited to the amount set out in his notice of claim.

*Interlocutory decrees affirmed.*
*Final decree affirmed with costs.*