HOLIDAY HOMES, Inc., Appellant,

v.

William K. BRILEY, Appellee.

No. 1764.

Municipal Court of Appeals for the District of Columbia.

Argued March 12, 1956.

Decided April 27, 1956.

---

Jack Pinkston, Silver Springs, Md., of the Bar of the State of Maryland, *pro hac vice,* by special leave of court, for appellant. Katherine M. Staley, Washington, D. C., was on the brief for appellant. Carl L. Shipley, Washington, D. C., also entered an appearance for appellant.

James P. Donovan, Washington, D. C., for appellee.

Before HOOD, Acting Chief Judge, QUINN, Associate Judge, and CAYTON (Chief Judge, Retired), sitting by designation under Code, § 11–776(b).

QUINN, Associate Judge.

William K. Briley filed suit to recover $1,800 as the balance due for services rendered and $400 as royalties for housing plans prepared by him and used by appellant corporation. Trial was had by the court without a jury and a finding and judgment was entered for Briley for $1,200.

Appellant corporation, which was in the business of prefabrication of residential construction, entered into an oral contract of hire with Briley as a result of a conference between Briley and one Selden, who was then the president of the corporation. There was conflicting testimony as to (1) when Briley's employment started; (2) the amount of his compensation; and (3) whether he was employed to perform architectural services. Appellant contends that Briley commenced work November 20, 1954, and was to receive $100 per week with the understanding that there would be a renegotiation of future salary if and when the corporation began to show a profit. Briley claims that he started October 17, 1954; that he was to receive $150 per week; and that from October 17, 1954, to March 4, 1955, a period of twenty weeks, he received $1,200, leaving a balance of $1,800 at the time of suspen-

sion of operations in March 1955. There is no dispute that approximately a month after Briley started to work he agreed to the corporation's using housing plans prepared by him in 1949. In return for this use Briley was to receive a royalty of $50 for each house constructed. He also agreed to design a new house for the corporation for a royalty of $100. The record shows that the plans Briley prepared in 1949 were used by the corporation in the construction of six houses and that his plan for the new house was used on one occasion.

Appellant contends that Briley was not licensed to practice as a registered architect from October 1954 to March 1955 as required by D.C.Code 1951, § 2–1014 and therefore the contract was void and unenforceable. Thus we must decide whether the trial court, from the conflicting testimony as to when Briley commenced his services, the amount of his compensation, and the nature of his employment, was justified in making a finding in his favor for $1,200.

The Architect's Registration Act as amended in 1950 prohibits the practice of architecture by one not qualified as required by the Act.[1] It is a regulatory act designed for the public welfare and one who engages in the practice of architecture in violation thereof cannot recover for his services.[2] The Act defines the practice of architecture as follows:

"* * * [the] rendering or offering to render services by consultations, preliminary studies, drawings, specifications, or any other service in connection with the design of any building or addition or structural alteration thereto * * *." Code 1951, § 2–1014(b).

Briley testified that he was employed to supervise the complete operation; to investigate the plant layout, production schedules and type of construc-

tion; and to see what could be done to reduce costs and make the business a profitable one. Support for the view that he was hired in a general supervisory capacity is found in the testimony of Mr. Selden, who testified in substance that he employed Briley as someone who could assist him in the operation of the business due to his knowledge of construction and architecture. We do not think the court was required to hold that the discharge of the duties outlined above constituted the practice of architecture within the meaning of the Act;[3] nor do we construe the Act to preclude all supervision of performance by one who has a knowledge of architecture, especially when that supervision is primarily concerned with analyzing and correcting inefficiencies in a business apparently being operated at a loss. However, it can hardly be argued that rendering of designs for use on a reproduction basis and the designing of a new house did not constitute the practice of architecture within the meaning of the Act

The next question then is whether Briley engaged in such practice in violation of the Act. It is stated in the Act:

"* * * It shall be unlawful for any architect who fails to renew his or her registration to continue the practice of architecture, subject to restoration upon paying the fee therefor prescribed in accordance with section 2–1023." Code 1951, § 2–1025.

There was testimony that Briley was issued a license in the District of Columbia in 1952. It was erroneously renewed in 1953 due to the fact that the fee forwarded for the restoration of his expired certificate of registration was insufficient. In December 1953 Briley was notified of this error and informed that pending receipt of the balance of the fee his registration had lapsed. He did not renew his registration until October 1955, which placed

---

1. Code 1951, § 2–1014.

2. Dunn v. Finlayson, D.C.Mun.App., 104 A. 2d 830.

3. McDowell v. City of Long Beach, 12 Cal. App.2d 634, 55 P.2d 934.

him in good standing until April 30, 1956.[4] Since he rendered designs while his registration was lapsed the conclusion is inescapable that he practiced architecture in violation of the Act. However, we hold that this violation extended only to the November agreement in which Briley consented to the use of his existing plans and also agreed to design a new house for the corporation; that is, that Briley entered into two contracts, the first of which was to provide supervisory services of other than an architectural nature, and the second, to render designs and plans for which he was to receive fees over and above the salary agreed to in the original employment contract.

■ Whether a number of promises constitute one contract or more than one is primarily a question of intention of the parties. In ascertaining this intention, consideration may be given to whether the parties assented to all the promises as a single whole, and to whether the consideration was given for each part as a separate unit or whether there was a single consideration covering the various parts.[5] The record readily reveals that all the promises were not assented to as a single whole. It does not show that singleness of consideration which would have indicated an intention that there was to be one entire contract.[6] Briley testified that the original agreement concerning his employment did not include the rendering of architectural plans since the corporation already had in its employ an architect who performed that service. Further, the original agreement was for a stated salary separate and distinct from the royalties later agreed to as consideration for the use of his plans.

■ By resorting to mathematical computation we are impelled to conclude that the trial court allowed Briley to recover on both contracts. This we think was error. In making its general finding for $1,200 the trial court apparently found that Briley started his employment in October instead of November and that his salary was to have been $100 per week instead of $150. Using this formula Briley would have been entitled to eight weeks' salary, a total of $800. If the trial court had found that Briley was to have received $150 per week, it would have had to render judgment for salary alone in the amount of $1,800. It seems clear then that the remaining $400 of the judgment was the amount awarded for architectural services rendered in connection with the second contract. Since we have held this contract to be in violation of the law and therefore unenforceable, Briley may not recover for those services.

It follows that the trial court erred in fixing the amount of recovery at $1,200. Since the evidence supports an award of $800 for supervisory services, the judgment of the trial court will be affirmed provided appellee within ten days hereof files with the clerk of this court a remittitur in the sum of $400; otherwise the judgment shall be reversed and the cause remanded for new trial.[7]

It is so ordered.

4. Code 1951, § 2–1025(c).

5. Audubon Bldg. Co. v. F. M. Andrews & Co., 5 Cir., 187 F. 254; Bianchi Bros. v. Gendron, 292 Mass. 438, 198 N.E. 767, 107 A.L.R. 953; Board of Com'rs of Kingfisher County v. Vahlberg, 198 Okl. 527, 180 P.2d 144; 2 Williston on Contracts (Rev. ed.), § 863; 17 C.J.S., Contracts, § 331 et seq.

6. Cf. Spalding County v. W. Chamberlin & Co., 130 Ga. 649, 61 S.E. 533.

7. Lalley v. Escoett, 79 U.S.App.D.C. 306, 146 F.2d 667.