## POTTER & MCARTHUR, INC. *vs.* CITY OF BOSTON.

Suffolk. February 10, 1983. — March 11, 1983.

Present: GRANT, CUTTER, & KASS, JJ.

*Contract,* Architectural services, With municipality, Entire or divisible. *Boston.*

A fixed fee contract by the city of Boston for naval architectural services, under which the architect was to receive a series of partial payments, and which provided that the architect's performance could be discontinued by the city's fire commissioner at any time and would be discontinued in the event the city did not commence construction of a fireboat within a specified period, was separable into several parts so as to preclude the architect's recovery of the balance of the fixed fee following failure of the city to commence construction within the specified period. [455-457]

Work by a naval architect in making recommendations concerning a proposed construction contractor for a fireboat was not compensable either under the extra work provision of the architect's contract with the city of Boston, which had not been followed, nor as the result of any "verbal contract" arising from discussions between the architect's representatives and the city's fire commissioner. [458-460]

CONTRACT. Writ in the Superior Court dated April 25, 1972.

The case was heard by *O'Neil,* J., on a motion for summary judgment.

*Elizabeth H. Kunz* for the plaintiff.

*John R. Devereaux,* Assistant Corporation Counsel, for city of Boston.

CUTTER, J. This action, brought in 1972 by Potter & McArthur, Inc. (Pomar), seeks to recover a balance allegedly due from the city under a fixed fee contract dated January 7, 1969 (and signed by the mayor on January 23, 1969). The contract was for services as naval architect in connection with a fireboat to be designed by Pomar and

constructed for the city. The fixed fee of $22,600 was to be paid in accordance with a stipulated schedule based upon Pomar's completion of specified stages of its work. The case was submitted to a Superior Court judge upon a statement of agreed facts. This incorporated by reference numerous exhibits and at least parts of some depositions. The trial judge, on cross motions, denied summary judgment for Pomar upon Pomar's claim for the balance of its fixed fee (above amounts already paid to it, in accordance with the payment schedule in art. VII of the contract, as particular segments of Pomar's work were completed). The judge, however, granted summary judgment for Pomar for $3,895.15 on account of extra work (claimed to be due under art. V of the contract). From the judgment, both the city and Pomar appealed.

1. The trial judge ruled that despite the contract for a stipulated fixed fee, the contract "was essentially a divisible contract." As Professor Corbin has stated, the conclusion that a contract is "divisible" rather than "entire" may be confusing and is not invariably dispositive of all related issues. 3A Corbin, Contracts § 694 (1960 & Supp. 1982). See 6 Williston, Contracts §§ 861 & 862 (3d ed. 1962 & Supp. 1982). Upon the agreed facts before us, however, we think that the several parts of the contract were separable in the sense that Pomar's performance and the city's payments could "be apportioned into corresponding pairs of part performances so that the parts of each pair . . . [may be] properly regarded as agreed equivalents," as discussed in Restatement (Second) of Contracts § 240, and comments c, d & e (1979). See also id. at § 183.

The contract (art. VII), in prescribing specified part payments of the total fixed fee for each segment of Pomar's work, expressly stated that the sum paid "shall be payment in full for all work done and all services rendered by the Architect [Pomar] under this contract" after the event giving rise to the next (if any) prior part payment and before the event which was to be the occasion for the payment then being made. Pursuant to art. VIII, Pomar's services could

have been discontinued by the city's fire commissioner at any time.[1] The trial judge could reasonably conclude on such language that each instalment of fixed fee was an agreed equivalent of the segment of work for which it was paid or to be paid, and that (in the circumstances) Pomar as architect would not be entitled to any payment for its performance of further work until it was able to proceed, and in fact did proceed, to the next segment of its performance. The Massachusetts cases seem to be consistent with the flexible rule laid down in the Restatement. See, e.g., a case where the earlier cases are collected, *Bianchi Bros.* v. *Gendron,* 292 Mass. 438, 443-446 (1935).[2] See also *Barrows* v. *Fuller,* 253 Mass. 79, 83-84 (1925); *Carrig* v. *Gilbert-Varker Corp.,* 314 Mass. 351, 357-358 (1943). Compare *Rich* v. *Arancio,* 277 Mass. 310, 313-314 (1931); *Carlo Bianchi & Co.* v. *Builders' Equip. & Supplies Co.,* 347 Mass. 636, 649-650 (1964). If the city in fact had discontinued the contract, there would have been no doubt (under the contract terms just mentioned) that Pomar would have had no claim to any portion of the fixed fee not earned by it prior to the discontinuance.

In the circumstances, the failure of the city formally to discontinue the contract made no difference to Pomar. Article VI of the contract provided that if "construction of the fireboat is commenced within eighteen months after the written approval by the . . . [fire commissioner] of the contract drawings and detailed specifications, the Architect [Pomar] shall render full architectural and engineering services in connection therewith and shall fully supervise the construction of the fireboat." Pomar's obligation to engage

---

[1]Upon discontinuance Pomar, provided that it was not then at fault, would have received such proportion of the next instalment of the fixed fee "as the services actually performed by [Pomar] . . ., up to the date of the discontinuance, bear to the total services required for that instalment."

[2]In the *Gendron* case (at 445) it was said, "A contract may be entire in the sense that there is but one agreement covering all the terms and yet it may be that the performance under the contract will be divided into different groups, each set embracing performances which are the agreed exchange for each other, the result being that the contract is entire but divisible."

at all in the construction phase of the contract was thus dependent upon commencement of the boat's construction within eighteen months after the approval of Pomar's drawings and detailed specifications. It is agreed that such approval was received on April 29, 1969. Various delays ensued, which here need not be recounted in detail, and it was only after the third request for bids that a bid was obtained (from Grafton Boat Co., Inc., hereinafter Grafton, on a somewhat changed proposal form and modified specifications) for a fireboat which could be built within the price limit set in the contract (as then modified). A contract with Grafton was signed by the mayor on November 23, 1970, more than eighteen months after the city's approval of Pomar's plans and specifications.

An officer of Pomar on September 4, 1970, had written to the fire commissioner calling to his attention that the eighteen-month period just mentioned would expire in October, 1970, and that art. VI of the contract limited "the obligation of . . . [Pomar] to commence technical services for supervision during construction" to that eighteen-month period. The letter also recommended renegotiation and amendment of Pomar's contract with the city at a higher fixed fee. On December 24, 1970, the same officer of Pomar wrote to the fire commissioner sending to him a copy of a letter from Grafton to Pomar requesting Pomar to review construction drawings. The final paragraph of Pomar's letter read, "At this time, we have no contractual arrangement with the [c]ity . . . or funds to review the submitted material and we . . . request . . . instructions on how to deal with this matter."

In view of all the circumstances, including the discussions (mentioned in part 2 of this opinion) between the representatives of Pomar and the fire commissioner and of the latter's inaction about arranging a suitable amendment of Pomar's contract with the city, we are of opinion that the city, as well as Pomar, reasonably could be found to be no longer bound to go forward with Pomar as supervisor of the construction aspects of the contract.

2. When Grafton made its bid, ultimately accepted by the city in slightly modified form, the fire commissioner encouraged, and may have requested, Pomar to examine the Grafton bid and to provide the city at least with comments and recommendations concerning its adequacy. Pomar contends that such work was within art. V of the contract[3] and that it was properly performed by Pomar in reliance on discussions with the fire commissioner amounting to a "verbal contract." The trial judge, by his order for summary judgment for Pomar for $3,895.15, apparently accepted that view.

The judge's decision cannot be sustained. The exact language of art. V (emphasized in note 3, *supra*) provides that payment for nonfundamental or "extra" revisions and drawings by Pomar was made in accordance with this part of art. V only "provided an amendment" of the contract was executed and that an appropriation was available. We assume that an adequate appropriation probably was available. No contract amendment, however, was executed, even though one was requested by Pomar's letter of September 4, 1970, to the fire commissioner and, as an officer of Pomar testified by deposition and affidavit, was orally agreed to by the commissioner. This amendment was to be carried out after the construction contract with Grafton was "nailed down" so that all the matters affecting the fire boat could be presented to the mayor on "actual bids."

Not only was the discussion between the commissioner and Pomar somewhat indefinite, but it is apparent under

---

[3]Article V reads in part: "If after the written approval of the contract drawings and detailed specifications by the . . . [fire commissioner, he] makes changes, not fundamental but which necessitate the redrawing of the contract drawings or rewriting of the detailed specifications, the Architect shall make such redrawings and revisions to the satisfaction of the . . . [fire commissioner], and the City shall pay the Architect [Pomar] for said revisions and redrawings at the rate of two (2) times the amount of the Architect's payroll costs in connection therewith upon the submission to the . . . [fire commissioner] of the employees' time sheets certified by the Architect *provided an amendment to this contract in connection with the aforesaid changes is executed and provided further that an appropriation is available therefor*" (emphasis supplied).

relevant decisions that the fire commissioner, without the written approval of the mayor, had no authority to amend the contract with Pomar or to waive any of its provisions. See *Adalian Bros.* v. *Boston*, 323 Mass. 629, 630-632 (1949). See, as to waiver, *Cashman* v. *Boston*, 190 Mass. 215, 218-219 (1906). See also *Glynn* v. *Gloucester*, 9 Mass. App. Ct. 454, 460-462 (1980), and cases cited. The matter (as to Boston) is governed by St. 1890, c. 418, § 6, the first sentence of which has been amended most recently by St. 1955, c. 60, § 1, and the second sentence of which has been amended most recently by St. 1939, c. 156, § 2.[4] The emphasized language of the statutes (see n.4) is controlling in the present case.

It may well be that Pomar has been treated badly by representatives of the city. On this record we need not determine whether this is so. The present case comes within the principle that a person who "enters into a contract with a public officer who undertakes to act for and to bind a municipal corporation" must "at his peril . . . ascertain the extent of the authority of the public officer with whom he deals." The public "is not estopped by a violation of duty on the part of public officials." See *Wormstead* v. *Lynn*, 184 Mass. 425, 428 (1903). See also *Savignano* v. *Gloucester Housing Authy.*, 344 Mass. 668, 671-672 (1962); *Central Tow Co.* v. *Boston*, 371 Mass. 341, 343-345 (1976). Recovery for work done in violation of limitations on the

---

[4]These provisions, as compiled in the City of Boston Code, tit. 4, c.1. § 8 (1975), read in part: *"All contracts made by any department of the city of Boston* or by any officer, board or official of the county of Suffolk having power to incur obligations on behalf of the county in cases where the obligations are to be paid for wholly from the treasury of the city, *shall*, when the amount involved is two thousand dollars or more, . . . *be in writing;* and *no such contract shall be deemed to have been made or executed until the approval of the mayor* of the city *has been affixed thereto in writing* and the auditor of the city has certified thereon that an appropriation is available therefor . . . . [N]o *such contract shall be altered except by a written agreement of the contractor,* sureties on his or their bond, *and the officer, board or official making the contract, with the approval of the mayor affixed thereto"* (emphasis supplied).

contracting powers of municipal officers also cannot be had on principles of quantum meruit. See the *Adalian Bros.* case, 323 Mass. at 632.

The judgment is reversed and judgment is to be entered for the defendant.

*So ordered.*