AKRON BRICK & BLOCK CO. *vs.* MONIZ ENGINEERING COMPANY, INC.

Barnstable.    March 6, 1974. — April 8, 1974.

Present: REARDON, QUIRICO, BRAUCHER, KAPLAN, & WILKINS, JJ.

*Evidence*, Prima facie evidence.    *Practice, Civil*, Action transferred to District Court.    *Sale*, Acceptance of goods, Rejection of goods, Revocation of acceptance.    *Words*, "Sale on approval."

A District Court finding, being prima facie evidence under G. L. c. 231, § 102C, on such matters as were put in issue, is alone sufficient to warrant a finding on those issues in the Superior Court. [94]

Under G. L. c. 106, § 2-709 (1) (a), a seller was entitled to the unpaid portion of the price of goods accepted, even though the seller had retained title and the buyer had shipped the goods back to it. [94-95]

CONTRACT. Writ in the Superior Court dated May 31, 1967.

The action was tried before *Hudson, J.*

*Edward O. Proctor, Jr.*, for Akron Brick & Block Co.

*John F. Cremens* (*Howard J. Alperin & William E. Ryan* with him) for Moniz Engineering Company, Inc.

BRAUCHER, J.    The buyer of a machine is here resisting a claim for the balance of the price; it asserts that under the contract the seller remained the owner of the machine, that the machine was returned to the seller, and that the seller will be unjustly enriched. We hold that (1) a District Court finding, introduced as "prima facie evidence" in the Superior Court under G. L. c. 231, § 102C, is sufficient to warrant a finding no matter what other evidence is introduced in the Superior Court, and (2) apart from any District Court finding, under the Uniform Commercial Code, G. L. c. 106, § 2-709 (1) (a), a seller is entitled to the balance of the price of goods accepted, even though the

seller has retained title and the buyer has shipped the goods back to him.

Akron Brick & Block Co. (Akron) is an Ohio corporation with its principal place of business in Akron, Ohio. By writ dated May 31, 1967, it began this action of contract in the Superior Court against Moniz Engineering Company, Inc. (Moniz), a Massachusetts corporation with its principal place of business in Teaticket on Cape Cod, to recover $15,000 paid for a machine. The action was transferred to the District Court under G. L. c. 231 § 102C, Moniz filed an answer in set-off, and trial resulted in a finding for Moniz as defendant and a finding for Moniz as plaintiff in set-off in the sum of $13,000. After re-transfer to the Superior Court, trial before a jury resulted in a verdict for Moniz as defendant and for Moniz as plaintiff in set-off in the amount of $13,100. Akron brings exceptions which present the question whether the verdict on the answer in set-off was warranted by the evidence.

Much of the evidence was undisputed. By a written agreement dated December 3, 1963, Moniz agreed to sell the machine to Akron for $28,100, $10,000 with order, $5,000 on delivery, and the balance of $13,100 "in Thirty (30) days, after the machine is in operation." Moniz "remains the owner of the 'Mon-O-Cube' until the 'Mon-O-Cube' is paid in full. It is further understood that if the 'Mon-O-Cube' does not meet the approval of the purchaser," Moniz "will refund the down payment, including Engineering charges." The $10,000 was paid in December, 1963.

Early in April, 1964, the machine was delivered and installed and the $5,000 due on delivery was paid. The machine was used by Akron until late in June. There was conflicting testimony as to how well it worked and as to whether there were complaints to Moniz. There was discussion of a possible modification of the machine to perform an additional function desired by one of Akron's customers, and Moniz made an offer in a letter dated July 3, 1964, to make such a modification, but there was no

reply. On June 27, 1964, Akron took the machine out of service and shipped it back to Moniz. Moniz put it in a storage shed.

In October, 1964, Akron by letter demanded that Moniz refund the payments made on the machine. After conversations with Akron, Moniz tried to sell the machine to a New Hampshire firm. With the consent of Akron, Moniz let the New Hampshire firm use the machine for five or six weeks early in 1965, and the New Hampshire firm offered to buy it for $18,000. Akron was informed of the offer and rejected it. The machine was then returned to Moniz. At the time of trial it was still in a shed at Moniz's plant.

1. The District Court finding was admitted in evidence at the Superior Court trial. Under G. L. c. 231, § 102C, as amended, "The decision of, and the amount of the damages assessed, if any, by a district court shall be *prima facie evidence* upon such matters as are put in issue by the pleadings, and no other findings of such court shall at any time be admissible as evidence or become part of the pleadings" (emphasis supplied). "This rule means that no matter what other evidence might be introduced in the Superior Court, the decision of the District Court judge, which, so far as admissible at least, would consist of a very few words, such as 'I find for the plaintiff and assess damages in the sum of $250,' would be evidence warranting a finding for the plaintiff." *Lubell* v. *First Natl. Stores, Inc.* 342 Mass. 161, 164 (1961). It follows that there was no error in submitting the case to the jury.

2. Apart from the District Court finding, there was evidence to warrant findings that Akron had a reasonable opportunity to inspect the machine, and that it did not reject the machine within a reasonable time after delivery or seasonably notify Moniz that it rejected the machine. G. L. c. 106, § 2-602 (1). If so, it failed to make an effective rejection, and there was an acceptance of the goods. G. L. c. 106, § 2-606 (1) (b). Even if the contract clause with respect to "approval of the purchaser" made the transaction a "sale on approval" under G. L. c. 106, § 2-326 (1) (a), failure seasonably to notify Moniz of election to return the

goods was acceptance. G. L. c. 106, § 2-327 (1) (b). The evidence did not compel a finding that the machine was nonconforming, that the nonconformity substantially impaired its value to the buyer, or that the buyer revoked its acceptance within a reasonable time by notifying the seller. G. L. c. 106, § 2-608 (2). If the buyer accepted the goods and did not revoke the acceptance, the seller may recover the unpaid portion of the price. G. L. c. 106, §§ 2-607 (1), 2-709 (1) (a). *Axion Corp.* v. *G. D. C. Leasing Corp.* 359 Mass. 474, 478-481 (1971).

These conclusions are not affected by the contract clause providing that Moniz "remains the owner." The provisions of art. 2 of G. L. c. 106 apply "irrespective of title to the goods except where the provision refers to such title." G. L. c. 106, § 2-401. Any reservation by the seller of title to goods delivered to the buyer is limited in effect to a reservation of a security interest. G. L. c. 106, § 2-401 (1). The return of the machine to Moniz brought the case within G. L. c. 106, § 2-709 (2): "Where the seller sues for the price he must hold for the buyer any goods which have been identified to the contract and are still in his control except that if resale becomes possible he may resell them at any time prior to the collection of the judgment." Compare *Jones* v. *Le May-Leib Corp.* 301 Mass. 133, 134-136 (1938). Moniz was not required to resell in a transaction to which Akron objected.

If the machine is resold, the net proceeds of the sale must be credited to Akron. Payment of a judgment for the balance of the price will entitle it to the machine if not resold. G. L. c. 106, § 2-709 (2). Thus there is no unjust enrichment of the seller. *Carter, Moore & Co. Inc.* v. *Donahue,* 345 Mass. 672, 677 (1963). Compare *D'Aprile* v. *Turner-Looker Co.* 239 N. Y. 427, 431 (1925); *Higgins* v. *California Prune & Apricot Growers, Inc.* 16 F. 2d 190, 193 (2d Cir. 1926), cert. dism. 273 U. S. 781 (1927); *Flesher* v. *Handler,* 303 Mass. 482, 485 (1939).

*Exceptions overruled.*