*Southern District*

## No. 133

## CANNON, NAMROC & ASSOCIATES, INC.
### v.
## MAX SONTZ COMPANY, INC.

Argued: March 17, 1976. Decided: August 11, 1976.

Case tried to *Owen, J.,* in the District Court of Southern Norfolk. Number: 23708.

Present: Lee, P.J., Rider, and Welch, J.J.

**Rider, J.** This is an action of contract to recover the purchase price for eight (8) infra-red heaters which the defendant purchased from the plaintiff.

The answer is a general denial with the allegation of estoppel and payment. The answer also alleges that the goods were defective; that they were not merch-

antable or fit for the purpose intended as warranted; that there was no consideration; and that there was fraud.

The court found for the defendant.

*At the trial there was evidence tending to show:*

The plaintiff, a wholesaler of heating and ventilating equipment, was contacted by a representative of the defendant, a heating and ventilating engineering and contracting firm. The defendant was interested in purchasing heating units to heat a portion of a large one-room steel building owned by a customer of the defendant engaged in the manufacture of steel products. The plaintiff's salesman, together with a representative of a manufacturer of infra-red heaters whose products were being handled by the plaintiff, visited the steel plant belonging to the defendant's customer, where the men for whom the defendant's customer wanted to supply heat were pointed out to them. The plaintiff's salesman recommended the installation of four (4) infra-red heaters so located and positioned that two (2) heaters would emit heat converging at a table where there was to be one operator and two (2) heaters would emit heat converging at a second table where there was to be another operator. The defendant introduced evidence that there were three (3) operators for whom heat was to be provided rather than two (2).

The defendant purchased eight (8) infra-red heaters, four (4) of which were installed in an area other than that where the two (2) tables were located and four (4) were in fact installed in the general area where the two (2) tables were located but in a slightly different position than that recommended by the plaintiff's salesman. (The defendant denied that there was any change in the position of the heaters.) The defendant reported to the plaintiff that its customer was dissatisfied with the amount of heat furnished its employees and when the plaintiff's salesman visited the steel factory he found that two (2)

of the heaters were interfered with by existing duct work which he had originally recommended be eliminated. (There was some evidence that the plaintiff had been told it would not be eliminated.) He also found that two (2) of the heaters were positioned at a different angle from that shown on a diagram which he had previously submitted to the defendant for the purpose of showing the location of the heaters. One recommended corrective measure was the utilization of two (2) additional heaters but the plaintiff advised the defendant that it would not supply such heaters until the defendant first paid for the eight (8) heaters which it had received and for which the agree purchase price was $1,603.84. Just before suit was brought, which was May 19, 1971, the defendant told the plaintiff to take back the eight (8) heaters. The defendant never disconnected the heaters which it had connected to gas lines and the heaters have been used by the defendant's customer since they were installed by the defendant during cold weather to supplement an existing heating system. The eight (8) heaters were purchased by the defendant on October 19, 1970, and the defendant has never paid for the same.

At the close of the evidence and before arguments, the plaintiff made the following requests for rulings:

"1. Upon all the evidence, the plaintiff is entitled to recover.

2. Upon all the evidence, a finding for the plaintiff is warranted.

3. Upon all the evidence, the defendant is not entitled to rely on any breach of warranty on the part of the plaintiff, since the defendant has failed to give proper notice of such breach of warranty.

4. The defendant was not entitled to rely on any warranty or representation by the plaintiff, as alleged in the defendant's answer.

**5.** The defendant held itself out as an expert and, as such, did not rely on the plaintiff's representations or warranties."

The court denied the plaintiff's requests for rulings and found the following facts:

"I find the plaintiff did warrant that the installation they recommended would solve the defendant's heating problem; I find the installation did not solve the problem and the defendant did give due notice to the plaintiff."

The report states that it contains all the evidence material to the question reported. The plaintiff claims to be aggrieved by the refusal of the court to grant the foregoing requests for rulings, the finding for the defendant and the findings of fact.

■ There was prejudicial error in the denial by the trial justice of plaintiff's request for ruling No. 2. Its denial, where there was conflicting evidence, was equivalent to a ruling that the plaintiff could not recover as a matter of law. *Bresnick v. Heath,* 292 Mass. 293, 298 (1935). *Rummel v. Peters,* 314 Mass. 504, 517 (1943).

We deal first with the special findings of the trial justice, which read as follows:

"I find the plaintiff did warrant that the installation they recommended would solve the defendant's heating problem; I find the installation did not solve the problem and the defendant did give due notice to the plaintiff."

■ The report states that it contains all the evidence material to the question reported. However, nowhere in the report is there any evidence that an express warranty of the heaters was made by the plaintiff. The court's findings of fact are not a part of the record and cannot supply what the report lacks. *Attorney General v. Oliver,* 175 Mass. 163 (1900).

*McCarey v. Stop & Shop, Inc.,* 36 Mass. App. Dec. 60, 66 (1966). While any finding of the trial justice is not open to review if there is any evidence to support it, that evidence must be included in the report. See, *Buckley v. Railway Express Agency, Inc.,* 323 Mass. 448, 451 (1948). *Olofson v. Kilgallon,* 47 Mass. App. Dec. 116, 117 (1971).

■ The question arises whether the trial justice in his special findings was referring to a breach by the plaintiff of an implied warranty of merchantable quality or of an implied warranty of fitness for a particular purpose. The implied warranty of merchantable quality usually means that good shall be reasonably suitable for the ordinary uses for which goods of that kind and description are sold. UCC s.2-314 (2) (c). *Vincent v. Nicholas E. Tsiknas Co.,* 337 Mass. 726, 729 (1958). *Bruns v. Wellesley Hills Market, Inc.,* 39 Mass. App. Dec. 160, 164 (1968).

■ The burden of proving a breach of the warranties of merchantability or fitness of the product sold rested on the defendant. UCC s.2-607 (4). *Axion Corporation v. G.D.C. Leasing Corporation,* 359 Mass. 474, 481 (1971). *Beauty Garden, Inc. v. Beauty Supply Outlet, Inc.,* 37 Mass. App. Dec. 203, 207-208 (1967). No evidence is reported bearing on the merchantable quality of the heaters in question.

■ The implied warranty of fitness of a product for a particular purpose is conditioned on its proper use. *Coyne v. John S. Tilley Co., Inc.,* 366, Mass. 852 (1975).[1] *Piscitello v. Almy, Bigelow and Washburn,* 21 Mass. App. Dec. 10, 13 (1961). The reported evidence indicates that the fault lay in the improper location and positioning of the heaters in question by the defendant rather than in the heaters themselves.

From the report it would appear that the trial justice was plainly wrong in referring in his findings

[1] Mass. Adv. Sh. (1975) 2141, 2152-2156.

of fact to ". . . the installation they (plaintiff) recommended . . . ." The references in the report to recommendations by the plaintiff are as follows:

> "The plaintiff's salesman recommended the installation of four (4) infra-red heaters so located and positioned that two (2) heaters would emit heat converging at a table where there was to be one operator and two (2) heaters would emit heat converging at a second table where there was to be another operator."

The defendant, a heating and ventilating engineering and contracting firm, installed the heaters and connected them to gas lines upon its customer's premises. The report states that ". . . four (4) were in fact installed in the general area where the two (2) tables were located but in a slightly different position than that recommended by the plaintiff's salesman." After the defendant complained to the plaintiff that its customer was dissatisfied with the amount of heat furnished its employees, the plaintiff's salesman revisited the premises. Although the defendant denied that there was any change in the position of the heaters, plaintiff's salesman ". . . found that two (2) of the heaters were positioned at a different angle from that shown on a diagram which he had previously submitted to the defendant for the purpose of showing the location of the heaters." Plaintiff's salesman also ". . . found that two (2) of the heaters were interfered with by existing duct work which he had originally recommended be eliminated." From the foregoing reported facts it appears clear that the four heaters were not installed in accordance with the recommendations of the plaintiff. The logical inference is that the fault lay in the location of the installation by the defendant of the four (4) heaters in question rather than in the quality or efficiency of the heaters.

Since the reported facts do not support the special findings of the trial justice of a breach of warranty by

the plaintiff, either expressed or implied, we conclude that he erred in denying plaintiff's request No. 2 and that this was prejudicial error.

2. Moreover, we infer from the reported evidence that only four of the eight heaters sold by the plaintiff to the defendant are in issue with respect to breach of warranty. The report makes no reference to the remaining four. The nature of the contract, whether written or oral, and the provisions thereof are not disclosed in the report. It does not appear whether the heaters were uniform in size, shape or price, nor whether each heater was priced separately or all eight heaters were priced as a unit. If it is found on retrial that the contract of sale was divisible, then the plaintiff would be entitled to have its request No. 2 granted at least with respect to the heaters not in issue. *A. K. Young & Conant Mfg. Co. v. Wakefield,* 121 Mass. 91, 93 (1876). *Bianchi Bros. Inc. v. Gendron,* 292 Mass. 438, 444 (1935).

3. Since there must be a new trial on this action, we take this opportunity to express our views with respect to plaintiff's requests Nos. 1, 3, 4 and 5.

The plaintiff argues that the defendant accepted the heaters by virtue of UCC §2-606 (1) (b) by failing to make an effective rejection under §2-602 (1), which provides: "Rejection of goods must be within a reasonable time after their delivery or tender. It is ineffective unless the buyer seasonably notifies the seller."

The trial justice found that "the defendant did give due notice to the plaintiff", and denied plaintiff's request No. 3. This finding is supported in the report only by the statement that "Just before suit was brought, which was May 19, 1971, the defendant told the plaintiff to take back the eight (8) heaters." Since the heaters were purchased by the defendant on October 19, 1970, this 'notice' was given to the plaintiff almost six months, and a full heating season, after the purchase. Nothing appears as to the time

when the defendant knew or should have known of the alleged breach. Unless upon retrial the defendant sustains its burden of proving both timely and sufficient notice to the plaintiff we are of opinion that a similar request by the plaintiff should be granted. UCC §2-602 (1), §2-607 (4). *Monroe Auto Equipment Co. v. Bloom,* 326 Mass. 65, 67 (1950). *Axion Corporation v. G.D.C. Leasing Corporation* (supra) 478. *Akron Brick & Block Co. v. Moniz Engineering Co., Inc.,* 365 Mass. 92, 94-95 (1974)[2] *House of Bianchi, Inc. v. Merrimack Mfg. Co.,* 19 Mass. App. Dec. 66, 70-71 (1960). It is further to be noted that defendant's customer continued to use the eight heaters at least until the time of trial in November, 1974 and that they were not disconnected by the defendant and thereby made available for return to the plaintiff. See, UCC 2-602 (2) (a).

Based upon the evidence reported, plaintiff's requests Nos. 3 and 4 were not rendered immaterial by the special findings of the trial justice. As noted above, no evidence of any express warranty by the plaintiff was reported. With respect to an implied warranty of merchantability, there was no showing that the heaters were not "such as pass without objection in the trade under the contract description," UCC §2-314 (2) (a). "The requirement when it exists that goods shall be merchantable does not require that the goods shall be of first quality . . .". *Axion Corporation v. G.D.C. Leasing Corporation* (supra) 483, 484.

As for warranty of fitness for a particular purpose, it was not shown that the defendant relied on the seller's skill or judgment to furnish suitable heaters. Instead, the defendant, a heating and ventilating engineering and contracting firm and one whose expertise in the field of heating we infer, was actively involved in the selection and installation of the heaters.

---

[2] Mass. Adv. Sh. (1974) 511, 513.

■ The trial justice was correct in his denial of plaintiff's request No. 1. The allowance of this request would have been the equivalent of a ruling as a matter of law that on all the evidence a finding for the defendant could not have been made. *Pearson v. O'Connell*, 291 Mass. 527, 529 (1935). *Bresnick v. Heath*, 292 Mass. 293, 298 (1935).

The finding for the defendant should be reversed and a new trial ordered. **So ordered.**