Connecticut Investment Casting Corp. v. Made-Rite Tool Co., Inc.

CONNECTICUT INVESTMENT CASTING CORPORATION vs.
MADE-RITE TOOL CO., INC.

Hampden.  December 5, 1980. — February 17, 1981.

Present: HENNESSEY, C.J., BRAUCHER, KAPLAN, WILKINS, & ABRAMS, JJ.

Contract, Performance and breach, Damages.  *Uniform Commercial Code*, Acceptance of goods, Rejection of goods, Revocation of acceptance.  *Yale*.

A supplier of barrel latches under a written contract was entitled to recover the contract price for the latches even though the supplier had breached the contract by late delivery and by supplying nonconforming latches, where the buyer had accepted the goods by retaining them in spite of any nonconformity and failed to give the supplier notice of any subsequent revocation of its acceptance.  [606-608]

A supplier of barrel latches under a written contract was entitled to recover the full amount of the contract price even though it had breached the contract by late delivery and by supplying nonconforming latches where the buyer had accepted the latches and had sustained no damages from the breach.  [608-609]

CIVIL ACTION commenced in the District Court of Springfield on March 30, 1977.

The case was heard by *Walsh*, J.

The case was submitted on briefs.

*Michael G. West* for the plaintiff.

*Mark Beauregard* for the defendant.

HENNESSEY, C.J.  Connecticut Investment Casting Corporation (Casting) brought an action in the Springfield Division of the District Court Department to recover the contract price of $5,170.81 for barrel latches sold and delivered to Made-Rite Tool Co., Inc. (Made-Rite).  Made-Rite filed a counterclaim for $50,000, alleging that it had been damaged by Casting's breach of contract.  The District Court judge found for Made-Rite on Casting's complaint and for Casting on Made-Rite's counterclaim.  Casting,

claiming to have been aggrieved by the denial of certain requests for rulings, requested a report to the Appellate Division of the District Court Department, which found no prejudicial error and dismissed the report. From the decision of the Appellate Division Casting now appeals to this court pursuant to G. L. c. 231, § 109.

In the written report, which states that it contains all the evidence material to the questions reported, the District Court judge summarized the evidence as follows. Casting and Made-Rite had an agreement under which Casting was to supply 1,600 barrel latches by January 27, 1976. Casting shipped seventy-four parts on January 21, 1976, 228 parts on February 27, 1976, 623 parts on March 9, 1976, 629 parts on April 8, 1976, and seventy parts on May 14, 1976. Made-Rite introduced evidence that it needed the parts for a contract with the United States government. There was conflicting evidence of Casting's awareness of the government contract. Made-Rite produced evidence that on January 28, 1976, the day after the due date of the contract with Casting, Made-Rite telephoned Casting and stated that Casting had breached the contract but that Made-Rite would make every effort to obtain an extension on its contract with the government. Made-Rite managed to obtain several extensions on the latter contract but did not meet the final deadline of June 28, 1976. During the same period, Made-Rite had approximately forty other government contracts, six or seven of which were priority contracts. When Made-Rite missed the deadline of June 28, 1976, the government cancelled that contract, as a result of which Made-Rite lost the contract price and certain administrative expenses, and was assessed a penalty. Made-Rite was not able to resell the latches to the government or to use them itself. At the time of trial, all the latches were still in Made-Rite's possession.

Made-Rite introduced evidence that some of the latches did not meet the contract specifications. Of the approximately 1,625 latches provided, Made-Rite returned 179 as nonconforming in early April of 1976; Casting reworked

382 Mass. 603                                            605

Connecticut Investment Casting Corp. *v.* Made-Rite Tool Co., Inc.

164 of these and redelivered them on April 28, 1976. An in-house inspection of eighty additional latches on April 26, 1976, revealed that seventeen (approximately twenty per cent) were nonconforming. Made-Rite decided not to return any more nonconforming latches to Casting for reworking, but rather to rework them itself.

Made-Rite offered evidence of numerous discussions with Casting, during which Made-Rite pressured Casting to deliver the latches and Casting responded that it was encountering unanticipated difficulties.

The District Court judge denied Casting's requested rulings numbered 2 through 8, set forth in the margin,[1] and entered judgment for Made-Rite on Casting's complaint. The judge found that Casting had broken the contract with Made-Rite in that "[t]he parts that were delivered were not in conformity with the specifications as given nor were they delivered on time." The judge entered judgment for Casting on Made-Rite's counterclaim for lost profits, finding that Casting neither knew nor should have known of Made-Rite's contract with the government, and that in any

---

[1] "1.  The evidence warrants a finding for the Plaintiff on its Complaint and on Defendant's Counterclaim. *Admitted*

"2.  The evidence does not warrant a finding for Defendant either on Plaintiff's Complaint or on its [*sic*] Counterclaim. *Denied*

"3.  As a matter of law, Defendant modified the due date for delivery of the goods under the contract between the parties up to and including May 17, 1976. M.G.L., ch. 106, Section 2-209. *Denied*

"4.  As a matter of law, Defendant accepted the goods delivered to it by Plaintiff. M.G.L., ch. 106, Section 2-606. *Denied*

"5.  As a matter of law, the goods delivered to Defendant were not defective but even if defective, Plaintiff cured said defects. M.G.L., ch. 106, Section 2-508, Section 2-608. *Denied*

"6.  As a matter of law as to the balance of goods Defendant claims to be defective, it has not allowed the Plaintiff a reasonable opportunity to cure said defects. M.G.L., ch. 106, Section 2-508, 2-608. *Denied*

"7.  As a matter of law, Defendant is unable to prevail on its claim for lost profits as it has not introduced sufficient evidence to prove same. *Denied*

"8.  Upon the facts and the law, a finding should be rendered for Plaintiff in the full amount of its Complaint and for Plaintiff on Defendant's Counterclaim. *Denied*"

event Made-Rite's alleged damages as a result of the loss of that contract were not the natural and probable consequences of Casting's breach.[2]

The Appellate Division treated the case as involving only questions of fact and found no prejudicial error. We conclude that the District Court judge erred in refusing to grant Casting's requested ruling that Made-Rite, as a matter of law, had accepted the barrel latches.

1. *Acceptance of latches by Made-Rite.* The contract between Casting and Made-Rite is for the sale of goods and is governed by art. 2 of the Uniform Commercial Code. G. L. c. 106, § 2-102. Casting contends that Made-Rite, both by retaining the goods in spite of any nonconformity and by failing to make a proper rejection under § 2-602 (1), accepted the goods. G. L. c. 106, § 2-606 (1) (*a*) (*b*).[3] Under § 2-602 (1),[4] a buyer who does not intend to accept the goods delivered must give the seller timely notice of his rejection. Failure to do so constitutes acceptance of the goods by the buyer, as long as he has had a reasonable opportunity to inspect them. G. L. c. 106, § 2-606 (1) (*b*). See, e.g., *Akron Brick & Block Co.* v. *Moniz Eng'r Co.*, 365 Mass. 92, 94 (1974).

---

[2] Made-Rite is not appealing the adverse decision on its counterclaim.

[3] Section 2-606, as appearing in St. 1957, c. 765, § 1, reads in full: "(1) Acceptance of goods occurs when the buyer

"(*a*) after a reasonable opportunity to inspect the goods signifies to the seller that the goods are conforming or that he will take or retain them in spite of their non-conformity; or

"(*b*) fails to make an effective rejection (subsection (1) of section 2-602), but such acceptance does not occur until the buyer has had a reasonable opportunity to inspect them; or

"(*c*) does any act inconsistent with the seller's ownership; but if such act is wrongful as against the seller it is an acceptance only if ratified by him.

"(2) Acceptance of a part of any commercial unit is acceptance of that entire unit."

[4] General Laws c. 106, § 2-602 (1), as appearing in St. 1957, c. 765, § 1, provides: "Rejection of goods must be within a reasonable time after their delivery or tender. It is ineffective unless the buyer seasonably notifies the seller."

There is no evidence that Made-Rite ever notified Casting of any intention to reject the barrel latches. Made-Rite had a reasonable opportunity to inspect, and in fact did inspect, the latches in its possession in early April. Rather than rejecting them, however, Made-Rite sent back to Casting only those latches found to be nonconforming, which Casting reworked and redelivered. After Made-Rite inspected additional latches on April 26, it decided to rework any nonconforming parts itself. These actions by Made-Rite do not constitute rejection of the barrel latches. Nor can we accept Made-Rite's contention that the "numerous conversations" with Casting constituted proper notice of rejection. On the contrary, the report of the District Court judge states that "[t]he substance of these conversations was that Defendant [Made-Rite] was pressuring Plaintiff [Casting] to deliver and Plaintiff was responding that it was encountering unanticipated difficulties." By pressuring a seller to deliver, a buyer does not reject the goods delivered.

Made-Rite argues that, even if it accepted the goods, it subsequently revoked its acceptance as allowed by G. L. c. 106, § 2-608.[5] Revocation of acceptance is ineffective, however, unless the buyer notifies the seller within a reasonable time after the buyer discovers the ground for revocation. § 2-608 (2). There is no evidence that Made-Rite

---

[5] Section 2-608, as appearing in St. 1957, c. 765, § 1, reads in full:

"(1) The buyer may revoke his acceptance of a lot or commercial unit whose non-conformity substantially impairs its value to him if he has accepted it

"(*a*) on the reasonable assumption that its non-conformity would be cured and it has not been seasonably cured; or

"(*b*) without discovery of such non-conformity if his acceptance was reasonably induced either by the difficulty of discovery before acceptance or by the seller's assurances.

"(2) Revocation of acceptance must occur within a reasonable time after the buyer discovers or should have discovered the ground for it and before any substantial change in condition of the goods which is not caused by their own defects. It is not effective until the buyer notifies the seller of it.

"(3) A buyer who so revokes has the same rights and duties with regard to the goods involved as if he had rejected them."

ever revoked its acceptance within a reasonable time by notifying Casting, and Made-Rite points to nothing that could be construed as notice of revocation. Made-Rite did notify Casting of two breaches of the contract — the failure to meet the January 27, 1976, delivery date, and the failure to conform 179 latches to the contract specifications. Despite the late delivery, however, all but the 179 nonconforming latches were accepted by Made-Rite, and 164 of the latter were accepted after they had been reworked and redelivered by Casting. Moreover, although notice of some breach of the sales contract may be sufficient to preserve the buyer's claim for damages for that breach, see G. L. c. 106, § 2-607 (3) (*a*), that does not mean it is sufficient notice for purposes of rejection or revocation, both of which require that the seller be informed that the buyer does not wish to keep the goods. See, e.g., *Solar Kinetics Corp.* v. *Joseph T. Ryerson & Son*, 488 F. Supp. 1237, 1245-1247, 1249 (D. Conn. 1980); *Allis-Chalmers Corp.* v. *Sygitowicz*, 18 Wash. App. 658, 661-662 (1977).

We conclude that Made-Rite failed to make an effective rejection and thus accepted the goods, § 2-606 (1) (*b*), and that Made-Rite did not revoke this acceptance. Having accepted the goods, Made-Rite must pay for them at the contract rate. G. L. c. 106, §§ 2-607 (1), 2-709 (1) (*a*). See *Akron Brick & Block Co.* v. *Moniz Eng'r Co.*, 365 Mass. 92, 95 (1974).

2. *Effect of Casting's breach.* The District Court judge found, and Casting does not now dispute, that Casting had broken the contract by virtue of its late delivery and its failure to conform to the contract specifications. From this finding, the judge concluded that Casting could not recover any of the purchase price. That conclusion does not follow, however, when, as here, the buyer has accepted the goods. Once goods have been accepted, the buyer's recourse, in the event of a contract breach by the seller, is to sue for damages resulting from the breach. G. L. c. 106, § 2-714. The judge found, however, that Made-Rite sustained no damages as a result of Casting's breach.

As Made-Rite accepted the barrel latches and sustained no damages from Casting's breach of the sales contract, Casting is entitled to recover the full amount of the contract price.

3. The order of the Appellate Division dismissing the report is reversed, the finding for Made-Rite is vacated, and judgment is to be entered for Casting on its complaint.

*So ordered.*